Jeremiah M. Welch (State Bar No. 180370)
jmw@sdvlaw.com
Cheryl L. Kozdrey (State Bar No. 323308)
clk@sdvlaw.com
SAXE DOERNBERGER & VITA
Two Better World Circle, Suite 200
Temecula, CA  92590
Ph: (951) 365-3145; Fax: (203) 287-8847

Attorneys for Plaintiff, Lendlease (US) Construction, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| LENDLEASE (US) CONSTRUCTION, INC. | Case No.: |
| Plaintiff, | |
| vs. | **COMPLAINT FOR BREACH OF CONTRACT, DECLARATORY RELIEF AND DEMAND FOR JURY TRIAL** |
| ZURICH AMERICAN INSURANCE COMPANY. | |
| Defendants. | |

WHEREFORE Plaintiff, LENDLEASE (US) CONSTRUCTION, INC.,

("Lendlease") by and through its attorneys, Saxe, Doernberger & Vita, P.C., hereby complains

and alleges as follows against Defendant ZURICH AMERICAN INSURANCE COMPANY

("Zurich") for whom:

## JURISDICTION AND VENUE

1.      Subject matter jurisdiction is founded in diversity of citizenship pursuant to 28

U.S.C.A. § 1332, based on the facts more specifically alleged in paragraphs 4 and 5 below.

2.      The amount in controversy, exclusive of interest and costs, exceeds the sum of

$75,000.

3.      Venue lies in this district pursuant to 28 U.S.C.A. § 1391, in that a substantial part

of the events or omissions giving rise to this action occurred in Los Angeles County, California,

and/or or a substantial part of the insurance claims that are the subject of this action pertain to property that is situated in Los Angeles County, California.

## PARTIES

4.     At all times hereinafter mentioned, Lendlease was and is a corporation organized and existing under the laws of the State of Florida, with its principal place of business at 200 Park Avenue, 9th Floor, New York, New York 10166.

5.     Lendlease is informed and believes and thereon alleges that, at all relevant times herein, Zurich was and is an entity formed and existing under the laws of the State of Illinois, with its principal place of business at 1299 Zurich Way, Schaumburg, Illinois 60196.

## FACTUAL ALLEGATIONS

6.     Lendlease provides construction management and general contracting services for various construction projects, including a new single-family home of approximately 30,000 square feet located on a one-acre site at 650 Firth Avenue in Los Angles, California (the "Project")

7.     Zurich is an insurance carrier and, amongst other things, is engaged in the business of providing insurance policies to construction managers and/or general contractors, including Lendlease.

8.     Lendlease and Zurich entered into an insurance contract, whereby Zurich agreed to bear the risk of loss pursuant to the terms of the subject policy in consideration for premiums paid by Lendlease.

## The Zurich Policy

9.     Lendlease procured Contractor's Protective Professional Indemnity and Liability Insurance from Zurich, bearing Policy No. EOC 9487862-07 (the "Zurich Policy").  A true and accurate copy of the Zurich Policy is attached hereto as **Exhibit A**.

10.     The Zurich Policy contains a New York choice of law provision, which states: "In the event [Lendlease] and [Zurich] dispute the meaning, interpretation operation of any term, condition, definition or provision of this policy resulting in litigation, arbitration or other form of

1

2

dispute resolution, [Lendlease] agrees with [Zurich] that the law of the State of New York shall

apply without giving effect to any conflict or choice of law principles."

3

4

        11.     Lendlease acquired the Zurich Policy to insure against loss, including, among

other things, damages because of a professional liability claim made by a third-party against

Lendlease.

5

6

        12.     Zurich is obligated, under Coverage Part A – Contractor's Professional Liability

Coverage of the Zurich Policy, as follows:

7

8

> [Zurich] will pay on behalf of [Lendlease] all sums in excess of the applicable

9

> Self Insured Retention . . . that  [Lendlease] is legally obligated to pay as

10

> "Damages" because of a "Professional Liability Claim" first made against

11

> [Lendlease] during the "Policy Period" and reported to [Zurich] during the

12

> "Policy Period" . . . provided that:

13

>     1.   the "Professional Liability Claim" arises out of an actual or alleged [ ]

14

>          act, error or omission with respect to the rendering of or failure to

15

>          render "Professional Services" by [Lendlease] or any entity for which

16

>          [Lendlease] is legally responsible;

17

>     2.   the actual or alleged [ ] act, error or omission took place during the

18

>          "Policy Period" . . .; and

19

>     3.   prior to the effective date of the first policy issued to [Lendlease] and

20

>          continuously renewed by [Zurich], none of [Lendlease's] principals,

21

>          partners, directors or officers had any knowledge of any circumstance

22

>          that could reasonably be expected to result in a "Professional Liability

23

>          Claim".

24

        13.    Coverage Part A. has a $10,000,000 limit of liability per claim and in the

25

aggregate, subject to a Self Insured Retention of $2,000,000 per claim.

26

        14.    The Zurich Policy defines the following pertinent terms as follows:

27

28

a. **Damages** "means the monetary amounts for which [Lendlease] may be held legally liable, including sums paid as judgments, awards, or settlements, and related to 'Professional Liability Claim Expenses' . . . ."

b. **Policy Period:** The Zurich Policy has an effective Policy Period of October 1, 2018 to October 1, 2019.

c. **Professional Liability Claim** "means any demand received by [Lendlease] seeking 'Damages' for 'Professional Services' and alleging liability or responsibility on [Lendlease's] part . . . ."

d. **Professional Services** includes those services that Lendlease is qualified to perform for others in its capacity as construction manager.

15. The Zurich Policy also imposes on Zurich a duty to defend any Professional Liability Claim seeking Damages to which Coverage Part A applies.

**The Project**

16. On December 11, 2012, Lendlease entered into a Standard Form of Agreement Between Owner and Contractor, AIA Document A107-2007 (the "Contract"), with Ziad R. Ghandour (the "Project Owner"), wherein Lendlease agreed to perform construction management and general contractor services for the Project.

17. The Project consisted of building a custom, luxury-style single-family home of approximately 30,000 square feet located on a one-acre site at 650 Firth Avenue in Los Angles, California.

18. Following completion of the Project, Lendlease filed a demand for arbitration against the Project Owner for his failure to pay pursuant to the Contract.

19. On February 20, 2017, the Project Owner filed an Arbitration Answering Statement and Counterclaim or Joinder/Consolidation Request, in which he denied Lendlease's claims and asserted a counterclaim for breach of contract arising from alleged defective construction.

20. On January 3, 2018, the Project Owner sent a letter to Lendlease alleging "fraud" and further detailing his claims for "massive construction defects."

21.     On January 23, 2019, the deposition of Christopher Dalbec ("Dalbec"), a former Lendlease employee, was taken.

22.     Upon information and belief, Dalbec worked on the Project as a superintendent for five months.

23.     During Dalbec's deposition, he provided extensive testimony alleging that Lendlease had failed to properly plan and sequence the Project, and that Lendlease had mismanaged the Project.

## The Claim

24.     On February 16, 2019, the Project Owner sent a letter to Lendlease (the "Claim") and, using the Dalbec deposition as support, made, for the first time, clear and distinct demands for damages based on allegations of Lendlease's failure to properly render professional construction management services, including its failure to plan and sequence the Project work correctly, and its mismanagement of the Project.

25.     The Claim constitutes a Professional Liability Claim arising out of alleged acts, errors or omissions with respect to the rendering of or failure to render Professional Services pursuant to Coverage Part A.

26.     On March 11, 2019, Lendlease reported the Claim to Zurich pursuant to the terms of Coverage Part A, seeking an acceptance of coverage for Damages arising from the Claim, and calling upon Zurich to adhere to its duty to defend Lendlease in connection with the Claim.

27.     Allegations of failure to properly render professional construction management services are distinguishable from the allegations of defective construction and fraud previously raised in the Project Owner's February 20, 2017 counterclaim and January 3, 2018 letter.

28.     Accordingly, a Professional Liability Claim was first made against Lendlease on February 16, 2019, during the October 1, 2018 to October 1, 2019 Policy Period, pursuant to Coverage Part A.

29.     Further, the Professional Liability Claim was first report on March 11, 2019, during the October 1, 2018 to October 1, 2019 Policy Period, pursuant to Coverage Part A.

30. By letter dated May 6, 2019, Zurich responded to Lendlease's request for coverage of the Claim, wherein Zurich communicated its position that Lendlease's Damages and defense are not covered under the Policy.

31. On October 9, 2019, Lendlease, by and through its attorneys, issued a rebuttal letter to Zurich further explaining its right to Policy benefits pursuant to Coverage Part A and requesting that Zurich reconsider its coverage disclaimer.

32. On January 2, 2020, after several follow-up communications made by Lendlease to Zurich requesting a status update, Zurich issued a responsive letter wherein it maintained its position that coverage for the Claim is not available under the Policy.

33. Zurich's failure to accept its duty to defend Lendlease and to provide coverage for Damages arising from the Claim pursuant to the terms of Coverage Part A is wrongful and unreasonable.

34. As a foreseeable consequence of Zurich's refusal to provide coverage for Lendlease's defense and Damages in excess of the Self Insured Retention, which has been exhausted, Lendlease has and will continue to suffer harm.

## COUNT I

## BREACH OF CONTRACT

35. Lendlease hereby incorporates paragraphs 1 through 35, inclusive, as though fully set forth herein.

36. Zurich, in consideration of premiums paid by Lendlease, duly executed and delivered to Lendlease the Zurich Policy.

37. Lendlease gave timely notice of the Claim under the Zurich Policy.

38. Lendlease is, and at all relevant times was, in compliance with all conditions precedent for coverage under the Zurich Policy.

39. Zurich is obligated pursuant to the terms of the Zurich Policy to pay for all sums in excess of the $2,000,000 Self Insured Retention that Lendlease is legally obligated to pay as Damages because of the Claim.

40.     Zurich also has a duty to defend Lendlease in connection with the Claim pursuant to the terms of the Zurich Policy.

41.     Despite demands, Zurich unreasonably refuses and/or otherwise fails to pay Lendlease for coverage benefits due and owing to Lendlease, including Damages and defense expenses, under the Zurich Policy terms.

42.     Zurich's refusal and/or failure to pay coverage benefits due and owing to Lendlease constitutes a breach of the Zurich Policy.

43.     As a result of Zurich's refusal and/or failure to pay coverage benefits, Lendlease has suffered damages and will continue to suffer damages in the future, all in a sum to be determined at the time of trial.

## COUNT II

## DECLARATORY JUDGMENT

44.     Lendlease hereby incorporates paragraphs 1 through 44, inclusive, as though fully set forth herein.

45.     A dispute has arisen between Lendlease and Zurich regarding whether Zurich is obligated to pay benefits to Lendlease for Damages and defense expenses arising from the Claim.

46.     An actual case and justiciable controversy exists regarding Zurich's obligations under the Zurich Policy with respect to whether coverage benefits arising from the Claim are due and owing to Lendlease.

47.     A declaratory judgment pursuant to New York Civil Practice Law and Rules § 3001 is necessary and appropriate to determine the rights and duties of Lendlease and Zurich pursuant to the Zurich Policy.

## PRAYER FOR RELIEF

WHEREFORE, Lendlease prays for judgment and the following specific relief against Zurich:

1.     Monetary Damages and defense costs associated with the Claim;

2.      Pre-judgment and/or post-judgment interest as permitted by law;

3.      A declaration that Zurich is obligated to pay benefits due and owing to Lendlease under the Zurich Policy terms;

4.      Attorneys' fees;

5.      Such other legal and equitable relief that this Court deems just and proper.

## JURY DEMAND

WHEREFORE, Lendlease (US) Construction, Inc. hereby demands a trial by jury for all claims herein for which a jury is permitted.

SAXE DOERNBERGER & VITA, P.C.

Dated: February 7, 2020

By: _____
        Cheryl L. Kozdrey, Esq.