# EXHIBIT A



# Important Notice - In Witness Clause

In return for the payment of premium, and subject to the terms of this policy, coverage is provided as stated in this policy.

IN WITNESS WHEREOF, this Company has executed and attested these presents and, where required by law, has caused this policy to be countersigned by its duly Authorized Representative(s).

President                                                    Corporate Secretary

---

**QUESTIONS ABOUT YOUR INSURANCE?**   Your agent or broker is best equipped to provide information about your insurance.   Should you require additional information or assistance in resolving a complaint, call or write to the following (please have your policy or claim number ready):

Zurich in North America
Customer Inquiry Center
1299 Zurich Way
Schaumburg, Illinois 60196-1056
**1-800-382-2150** (Business Hours:  8 a.m. - 4 p.m. [CT])
**Email:** info.source@zurichna.com

---



# Disclosure Statement

It is our pleasure to present the enclosed policy to you
for presentation to your customer.

**INSTRUCTION TO AGENT OR BROKER:**

WE REQUIRE THAT YOU TRANSMIT THE ATTACHED/ENCLOSED DISCLOSURE STATEMENT TO THE CUSTOMER
WITH THE POLICY.

Once again, thank you for your interest, and we look forward to meeting your needs and those of your customers.

# Disclosure Statement



**NOTICE OF DISCLOSURE FOR AGENT & BROKER COMPENSATION**

If you want to learn more about the compensation Zurich pays agents and brokers visit:

http://www.zurichnaproducercompensation.com

or call the following toll-free number:  (866) 903-1192.

This Notice is provided on behalf of Zurich American Insurance Company

and its underwriting subsidiaries.

# Contractor's Protective Professional Indemnity and Liability Insurance



**ZURICH AMERICAN INSURANCE COMPANY**
1299 Zurich Way
Schaumburg, Illinois 60196-1056

**Policy Number:**  EOC 9487862-07                    **Renewal of:**  EOC 9487862-06

**Producer Number:**  18232000

**Producer Name:**  MARSH USA INC

**Item 1.**  **Named Insured:**     LEND LEASE AMERICAS

        **Address:**          200 PARK AVENUE
                         9TH FL
                         NEW YORK, NY  10166-0005

**Item 2.**  **Limits of Liability:**  

| | | |
|---|---|---|
| **COVERAGE PART A:** | $10,000,000 | Each "Claim" |
| **COVERAGE PART B:** | $10,000,000 | Each "Claim" |
| **Rectification Coverage:** | $10,000,000 | Each Claim |
| **POLICY** | $10,000,000 | Aggregate Limit of Liability |

       **NEW YORK REGULATION 107 NOTICE:**  "Claim expenses" shall be charged against the Limits of Liability and Deductible in the amount up to 100% of the Limits of Liability and Deductible.  In the event that the Limits of Liability is completely exhausted by "claim expenses," we shall not be liable for "claim expenses" or for the amount of any judgment or settlement after exhaustion of the Limits of Liability.

**Item 3.**  **"Policy Period":**     Inception Date:  10/01/2018     Expiration Date:  10/01/2019
                               (12:01 a.m. local time at the address shown in Item 1.)

**Item 4.**  **Self Insured Retention:**  

| | | |
|---|---|---|
| **COVERAGE PART A:** | $2,000,000 | Each "Claim" |
| **COVERAGE PART B:** | $2,000,000 | Each "Claim" |
| **Rectification Coverage:** | $2,000,000 | Each Claim |

**Item 5.**  **"Retroactive Date":**     **See Applicable Attached Endorsements**

**NYFTZ Class:**   **1**     **Class Code:**  **1-MKTDV, 1-17982, 1-73908**

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**Item 6.**   **Premium:**          $2,156,223         ( 25.00% Minimum & Deposit Premium)

**Item 7.**   **Endorsement(s) Effective at Inception:**     **"See Schedule of Forms and Endorsements"**

**Item 8.**   **Policy Form:**          STF-CPP-100-B CW (11/09)

# Schedule Of Forms And Endorsements



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9487862-07 | 10/01/2018 | 10/01/2019 | 10/01/2018 | 18232000 | | |

**Named Insured and Mailing Address:**

LEND LEASE AMERICAS
200 PARK AVENUE
9TH FL
NEW YORK, NY  10166-0005

**Producer:**

MARSH USA INC
1166 AVENUE OF THE AMERICAS
NEW YORK, NY  10036-2708

| Form Number | Form Name |
|---|---|
| U-GU-319-F (01/09) | Important Notice - In Witness Clause |
| U-FTZ-D-112-C NY (02/16) | Contractor's Protective Professional Indemnity andLiability Insurance |
| STF-CPP-100-B CW (11/09) | Contractor's Protective Professional Indemnity and Liability Insurance |
| STF-CPP-150-A CW (04/10) | Modified Retroactive Dates |
| STF-CPP-107-A CW (05/09) | Additional Named Insured(s) |
| STF-CPP-109-A CW (05/09) | Choice of Counsel - Coverage Part A |
| STF-CPP-112-C CW (06/10) | Excess of Project Specific Insurance - Blanket |
| STF-CPP-116-A CW (05/09) | Ninety (90) Day Cancellation |
| STF-CPP-121-A CW (05/09) | Prior Claims Exclusion |
| STF-CPP-123-A CW (05/09) | Punitive Damages Where Allowable by Law |
| STF-CPP-146-B CW (03/11) | Modification Of Exclusion R - Deletion Of Terrorism Exclusion |
| STF-CPP-149-A CW (04/10) | Reduced Self-Insured Retention and Indemnity Endorsement |
| STF-CPP-152-A CW (05/10) | Excess of Project Specific Insurance - Specific Project Coverage Part A - Contractor's Professional Liability |
| STF-CPP-155-B CW (03/11) | Rectification Indemnity Coverage |
| STF-CPP-172-A CW (05/11) | ADA, FHA, OSHA, State Licensing and Regulatory Board Legal Expense Reimbursement Endorsement |
| STF-CPP-173-B CW (08/11) | Pre-Claims Assistance Endorsement |
| U-FTZ-167-A NY (05/10) | Defense Provision New York 100% Claim Expense Offset Endorsement |
| STF-CPP-140-A CW (01/10) | Amendment of Definitions |
| STF-CPP-140-A CW (01/10) | Amendment of Prior Knowledge Provision |
| STF-CPP-140-A CW (01/10) | Indemnified Parties - Vicarious Liability |
| STF-CPP-140-A CW (01/10) | Negligence Endorsement |
| STF-CPP-140-A CW (01/10) | Amendment of Insuring Agreement - Coverage Part A |

| | |
|---|---|
| STF-CPP-140-A CW (01/10) | Amendment of Notice of Circumstance |
| STF-CPP-119-B CW (02/12) | Nuclear Energy Liability Exclusion - Broad Form |
| U-FTZ-166-A NY (05/10) | Cancellation, Nonrenewal and Conditional Nonrenewal - New York |
| U-FTZ-170-A NY (05/10) | New York Regulation 121 Notice and Disclosure Statement |
| U-GU-1191-A CW (03/15) | Sanctions Exclusion Endorsement |

# Contractor's Protective Professional Indemnity and Liability Insurance



**THIS POLICY PROVIDES CLAIMS MADE COVERAGE. UNDER COVERAGE PART A, "PROFESSIONAL LIABILITY CLAIMS" MUST FIRST BE MADE AGAINST THE "INSURED" DURING THE "POLICY PERIOD" AND REPORTED IN WRITING TO US DURING THE "POLICY PERIOD" OR EXTENDED REPORTING PERIOD, IF APPLICABLE. UNDER COVERAGE PART B, "PROTECTIVE INDEMNITY CLAIMS" MUST FIRST BE MADE BY YOU AGAINST THE "DESIGN PROFESSIONAL" AND REPORTED IN WRITING BY YOU TO US DURING THE "POLICY PERIOD" OR EXTENDED REPORTING PERIOD, IF APPLICABLE.**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine your rights, duties and what is and is not covered. Throughout this policy the words "you" and "your" refer to the "Named Insured" shown in the Declarations. The words "we", "us", and "our" refer to the Company providing this insurance. This policy contains Coverage A - Contractor's Professional Liability Coverage and Coverage B - Contractor's Protective Professional Indemnity Coverage, including terms and conditions unique to those coverage parts, and Common Policy Sections applicable to both Coverage Part A and Coverage Part B.

Refer to the DEFINITIONS sections of this policy for the special meaning of words and phrases that appear in quotation marks. PLEASE READ THE ENTIRE POLICY CAREFULLY.

In consideration of the premium charged, your undertaking to pay the Self Insured Retention, if any, and in reliance upon the statements in the application made a part hereof, and subject to the Limit of Liability of this insurance as set forth in the Declarations, and the Exclusions, Conditions and other terms of this Policy, we agree with you as follows:

## I.  INSURING AGREEMENT

### COVERAGE PART A - CONTRACTOR'S PROFESSIONAL LIABILITY COVERAGE

#### A.  COVERAGE

We will pay on behalf of the "Insured" all sums in excess of the applicable Self Insured Retention noted in Item 4 of the Declarations that the "Insured" is legally obligated to pay as "Damages" because of a "Professional Liability Claim" first made against the "Insured" during the "Policy Period" and reported to us during the "Policy Period", the Automatic Extended Reporting Period or the Optional Extended Reporting Period if applicable, provided that:

1.  the "Professional Liability Claim" arises out of an actual or alleged negligent act, error or omission with respect to the rendering of or failure to render "Professional Services" by the "Insured" or any entity for which the "Insured" is legally responsible;

2.  the actual or alleged negligent act error, or omission took place during the "Policy Period" or on or after the "Retroactive Date" specified in the Declarations; and

3.  prior to the effective date of the first policy issued to you and continuously renewed by us, none of your principals, partners, directors or officers had any knowledge of any circumstance that could reasonably be expected to result in a "Professional Liability Claim".

#### B.  DEFENSE

We have the right and duty to defend, with counsel of our choice, any "Professional Liability Claim" seeking "Damages" to which Coverage Part A of this insurance applies. "Professional Liability Claim Expenses" reduce the applicable Limit of Liability identified in the Declarations and as described in Section IV.A.2 SELF INSURED RETENTION. Our duty to defend all "Professional Liability Claims" or pay any "Damages" or "Professional Liability Claim Expenses" to which this insurance applies shall end when the applicable Limit of Liability has been exhausted by the payment of "Professional Liability Claim Expenses" or "Damages".

### C. MEDIATION

If we and you agree to use "Mediation" to resolve a "Professional Liability Claim" and the "Professional Liability Claim" is resolved thereby, the Self Insured Retention set out in the Declarations shall be reduced by 50% for that "Professional Liability Claim", subject to maximum reduction of $20,000 each "Professional Liability Claim". Any Self Insured Retention payments above the reduced Self Insured Retention amount will be reimbursed within 30 days of the resolution of the "Professional Liability Claim".

### COVERAGE PART B - CONTRACTOR'S PROTECTIVE PROFESSIONAL INDEMNITY

### A. COVERAGE

We shall indemnify you for "Loss" in excess of the "Design Professional's Insurance", subject to the provisions of the Self Insured Retention and Limit of Liability designated in Items 4 and 2 of the Declarations, respectively, provided that:

1. a "Protective Indemnity Claim" is first made by you against the "Design Professional" under contract to you and reported in writing by you to us during the "Policy Period" or if exercised, the Optional Extended Reporting Period;

2. such "Protective Indemnity Claim" arises out of a negligent act, error or omission of the "Design Professional" in the rendering of or failure to render "Professional Services", and the act, error or omission took place on or after the "Retroactive Date" specified in the Declarations; and

3. prior to the effective date of the first policy issued to you and continuously renewed by us, none of your principals, partners, directors or officers had any knowledge of any circumstance that could reasonably be expected to result in a "Protective Indemnity Claim".

### B. DEFENSE

We shall not defend any "Design Professional", even if the "Design Professional's Insurance" has been reduced, exhausted, or for any reason is unavailable.

## II. DEFINITIONS

A. "Bodily Injury" means physical injury, sickness, disease, death, mental anguish or emotional distress sustained by any person.

B. "Claim" means "Professional Liability Claim" or as otherwise defined as by endorsement to this policy.

C. "Claim Expenses" means:

1. fees charged by an attorney designated by:

   (a) us; or

   (b) the "Insured" with our prior written consent.

2. with the exception of Item 4. in this definition, all other fees, costs and expenses resulting from the investigation, adjustment, or defense of a "Claim", and the premiums for appeal, attachment or similar bonds;

3. interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the amount available for the judgment under this policy; and

4. allowable expenses of $500 per day but no more than $10,000 for each "Claim" as compensation to your principals, directors, officers or employees for personally attending any legal or disciplinary proceeding at our request.  These allowable expenses shall not be applied towards reducing the applicable Self Insured Retention amount and are in addition to the Limit of Liability.

"Claim Expenses" do not include salaries of your principals, directors, officers or employees, or salaries or expenses of our regular employees or officials; or fees and expenses of independent or public adjusters retained by us or the "Insured".

D.   "Damages" means the monetary amounts for which the "Insured" may be held legally liable, including sums paid as judgments, awards, or settlements, and related "Professional Liability Claim Expenses" but do not include:

    1.   the restitution, return, withdrawal or reduction of fees, profits or charges for services rendered or offered or any other consideration or expenses paid to the "Insured" or by the "Insured" for services or products; or

    2.   judgments or awards deemed uninsurable by law.

E.   "Design Professional" means those persons or entities or successors professionally qualified to perform "Professional Services" either itself or through the services of a subcontractor or subconsultant at any tier.

F.   "Design Professional's Insurance" means all professional liability policies insuring the "Design Professionals" under contract to you.

G.   "Insured" means:

    1.   the "Named Insured";

    2.   your current or former principals, partners, executive officers, directors, stockholders, trustees or employees while acting on your behalf and within the scope of their duties as such;

    3.   your current or former employees including leased personnel under your supervision, but only for acts within the scope of their employment or lease agreement;

    4.   your heirs, executors, administrators, assigns and legal representatives in the event of death, incapacity or bankruptcy, but solely with respect to the liability of the Named Insured otherwise insured herein;

    5.   any "Predecessor in Interest";

    6.   any "Insured" with regard to its participation in a legal entity including a limited liability company or joint venture, but only to the extent of the Insured's legal liability resulting from its performance of Professional Services under the respective legal entity or joint venture.

    7.   Any entity that is newly formed or acquired by the Named Insured during the policy period where the Named Insured has greater than fifty percent ownership, control, or beneficial interest, provided however that:

        a.   Coverage shall be provided only for "Damages" arising out of "Professional Services" performed on or after the date of formation or acquisition, subject to the "Retroactive Date"; and

        b.   This coverage shall expire at the end of the Policy Period or within 90 days of such formation or acquisition of the entity, whichever is earlier, unless you submit written notice to the Company providing detailed information concerning the newly formed or acquired entity, and provided further that you pay any additional premium requested by the Company.

H.   "Loss" as respects Coverage Part B, means the amount you are legally entitled to recover from the "Design Professional(s)" either by adjudication by a court of competent jurisdiction, arbitration or settlement or any other method of dispute resolution to which we agree in writing.  Such "Loss" must be the result of a negligent act, error or omission on the part of the "Design Professional(s)" in the rendering of or failure to render "Professional Services".

I.   "Mediation" means non-binding intervention by a neutral third party.

J.   "Named Insured" means the partnership, firm or corporation named in Item 1 of the Declarations, and includes any and all affiliates, divisions, subsidiary corporations, or subsidiary limited liability companies thereof, and any other legal entity in which you have fifty percent or more ownership.

K.   "Policy Period" means the period set forth in the Declarations, or any shorter period resulting from a termination of this policy.

L.   "Predecessor in Interest" means any prior entity whose assets have been acquired by you or whose partners, principals or shareholders have joined you and whose name has been provided in the application and for whose insurance you are responsible by written agreement.

M.   "Professional Liability Claim" means any demand received by an "Insured" seeking "Damages" for "Professional Services" and alleging liability or responsibility on the "Insured's" part or on the part of any entity for whom the "Insured" is legally responsible.

# EXHIBIT A



# Important Notice - In Witness Clause

In return for the payment of premium, and subject to the terms of this policy, coverage is provided as stated in this policy.

IN WITNESS WHEREOF, this Company has executed and attested these presents and, where required by law, has caused this policy to be countersigned by its duly Authorized Representative(s).

President

Corporate Secretary

---

**QUESTIONS ABOUT YOUR INSURANCE?**   Your agent or broker is best equipped to provide information about your insurance.   Should you require additional information or assistance in resolving a complaint, call or write to the following (please have your policy or claim number ready):

Zurich in North America
Customer Inquiry Center
1299 Zurich Way
Schaumburg, Illinois 60196-1056
**1-800-382-2150** (Business Hours:  8 a.m. - 4 p.m. [CT])
**Email:** info.source@zurichna.com



# Disclosure Statement

It is our pleasure to present the enclosed policy to you
for presentation to your customer.

**INSTRUCTION TO AGENT OR BROKER:**

WE REQUIRE THAT YOU TRANSMIT THE ATTACHED/ENCLOSED DISCLOSURE STATEMENT TO THE CUSTOMER
WITH THE POLICY.

Once again, thank you for your interest, and we look forward to meeting your needs and those of your customers.

# Disclosure Statement



**NOTICE OF DISCLOSURE FOR AGENT & BROKER COMPENSATION**

If you want to learn more about the compensation Zurich pays agents and brokers visit:

http://www.zurichnaproducercompensation.com

or call the following toll-free number:  (866) 903-1192.


This Notice is provided on behalf of Zurich American Insurance Company

and its underwriting subsidiaries.

# Contractor's Protective Professional Indemnity and Liability Insurance



**ZURICH AMERICAN INSURANCE COMPANY**
1299 Zurich Way
Schaumburg, Illinois 60196-1056

**Policy Number:**    EOC 9487862-07                    **Renewal of:**    EOC 9487862-06

**Producer Number:**    18232000

**Producer Name:**    MARSH USA INC

**Item 1.**   **Named Insured:**    LEND LEASE AMERICAS

**Address:**    200 PARK AVENUE
9TH FL
NEW YORK, NY  10166-0005

**Item 2.**   **Limits of Liability:**   **COVERAGE PART A:**   $10,000,000   Each "Claim"
**COVERAGE PART B:**   $10,000,000   Each "Claim"
**Rectification Coverage:**   $10,000,000   Each Claim
**POLICY**   $10,000,000   Aggregate Limit of Liability

**NEW YORK REGULATION 107 NOTICE:**  "Claim expenses" shall be charged against the Limits of Liability and Deductible in the amount up to 100% of the Limits of Liability and Deductible.  In the event that the Limits of Liability is completely exhausted by "claim expenses," we shall not be liable for "claim expenses" or for the amount of any judgment or settlement after exhaustion of the Limits of Liability.

**Item 3.**   **"Policy Period":**    Inception Date:  10/01/2018    Expiration Date:  10/01/2019
(12:01 a.m. local time at the address shown in Item 1.)

**Item 4.**   **Self Insured Retention:**   **COVERAGE PART A:**   $2,000,000   Each "Claim"
**COVERAGE PART B:**   $2,000,000   Each "Claim"
**Rectification Coverage:**   $2,000,000   Each Claim

**Item 5.**   **"Retroactive Date":**    **See Applicable Attached Endorsements**

**NYFTZ Class:    1     Class Code:  1-MKTDV, 1-17982, 1-73908**

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**Item 6.**   **Premium:**          $2,156,223          ( 25.00% Minimum & Deposit Premium)

**Item 7.**   **Endorsement(s) Effective at Inception:**      **"See Schedule of Forms and Endorsements"**

**Item 8.**   **Policy Form:**          STF-CPP-100-B CW (11/09)

# Schedule Of Forms And Endorsements



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9487862-07 | 10/01/2018 | 10/01/2019 | 10/01/2018 | 18232000 | | |

**Named Insured and Mailing Address:**

LEND LEASE AMERICAS
200 PARK AVENUE
9TH FL
NEW YORK, NY  10166-0005

**Producer:**

MARSH USA INC
1166 AVENUE OF THE AMERICAS
NEW YORK, NY  10036-2708

| **Form Number** | **Form Name** |
|---|---|
| U-GU-319-F (01/09) | Important Notice - In Witness Clause |
| U-FTZ-D-112-C NY (02/16) | Contractor's Protective Professional Indemnity andLiability Insurance |
| STF-CPP-100-B CW (11/09) | Contractor's Protective Professional Indemnity and Liability Insurance |
| STF-CPP-150-A CW (04/10) | Modified Retroactive Dates |
| STF-CPP-107-A CW (05/09) | Additional Named Insured(s) |
| STF-CPP-109-A CW (05/09) | Choice of Counsel - Coverage Part A |
| STF-CPP-112-C CW (06/10) | Excess of Project Specific Insurance - Blanket |
| STF-CPP-116-A CW (05/09) | Ninety (90) Day Cancellation |
| STF-CPP-121-A CW (05/09) | Prior Claims Exclusion |
| STF-CPP-123-A CW (05/09) | Punitive Damages Where Allowable by Law |
| STF-CPP-146-B CW (03/11) | Modification Of Exclusion R - Deletion Of Terrorism Exclusion |
| STF-CPP-149-A CW (04/10) | Reduced Self-Insured Retention and Indemnity Endorsement |
| STF-CPP-152-A CW (05/10) | Excess of Project Specific Insurance - Specific Project Coverage Part A - Contractor's Professional Liability |
| STF-CPP-155-B CW (03/11) | Rectification Indemnity Coverage |
| STF-CPP-172-A CW (05/11) | ADA, FHA, OSHA, State Licensing and Regulatory Board Legal Expense Reimbursement Endorsement |
| STF-CPP-173-B CW (08/11) | Pre-Claims Assistance Endorsement |
| U-FTZ-167-A NY (05/10) | Defense Provision New York 100% Claim Expense Offset Endorsement |
| STF-CPP-140-A CW (01/10) | Amendment of Definitions |
| STF-CPP-140-A CW (01/10) | Amendment of Prior Knowledge Provision |
| STF-CPP-140-A CW (01/10) | Indemnified Parties - Vicarious Liability |
| STF-CPP-140-A CW (01/10) | Negligence Endorsement |
| STF-CPP-140-A CW (01/10) | Amendment of Insuring Agreement - Coverage Part A |

| | |
|---|---|
| STF-CPP-140-A CW (01/10) | Amendment of Notice of Circumstance |
| STF-CPP-119-B CW (02/12) | Nuclear Energy Liability Exclusion - Broad Form |
| U-FTZ-166-A NY (05/10) | Cancellation, Nonrenewal and Conditional Nonrenewal - New York |
| U-FTZ-170-A NY (05/10) | New York Regulation 121 Notice and Disclosure Statement |
| U-GU-1191-A CW (03/15) | Sanctions Exclusion Endorsement |

D.   "Damages" means the monetary amounts for which the "Insured" may be held legally liable, including sums paid as judgments, awards, or settlements, and related "Professional Liability Claim Expenses" but do not include:

   1.   the restitution, return, withdrawal or reduction of fees, profits or charges for services rendered or offered or any other consideration or expenses paid to the "Insured" or by the "Insured" for services or products; or

   2.   judgments or awards deemed uninsurable by law.

E.   "Design Professional" means those persons or entities or successors professionally qualified to perform "Professional Services" either itself or through the services of a subcontractor or subconsultant at any tier.

F.   "Design Professional's Insurance" means all professional liability policies insuring the "Design Professionals" under contract to you.

G.   "Insured" means:

   1.   the "Named Insured";

   2.   your current or former principals, partners, executive officers, directors, stockholders, trustees or employees while acting on your behalf and within the scope of their duties as such;

   3.   your current or former employees including leased personnel under your supervision, but only for acts within the scope of their employment or lease agreement;

   4.   your heirs, executors, administrators, assigns and legal representatives in the event of death, incapacity or bankruptcy, but solely with respect to the liability of the Named Insured otherwise insured herein;

   5.   any "Predecessor in Interest";

   6.   any "Insured" with regard to its participation in a legal entity including a limited liability company or joint venture, but only to the extent of the Insured's legal liability resulting from its performance of Professional Services under the respective legal entity or joint venture.

   7.   Any entity that is newly formed or acquired by the Named Insured during the policy period where the Named Insured has greater than fifty percent ownership, control, or beneficial interest, provided however that:

      a.   Coverage shall be provided only for "Damages" arising out of "Professional Services" performed on or after the date of formation or acquisition, subject to the "Retroactive Date"; and

      b.   This coverage shall expire at the end of the Policy Period or within 90 days of such formation or acquisition of the entity, whichever is earlier, unless you submit written notice to the Company providing detailed information concerning the newly formed or acquired entity, and provided further that you pay any additional premium requested by the Company.

H.   "Loss" as respects Coverage Part B, means the amount you are legally entitled to recover from the "Design Professional(s)" either by adjudication by a court of competent jurisdiction, arbitration or settlement or any other method of dispute resolution to which we agree in writing.  Such "Loss" must be the result of a negligent act, error or omission on the part of the "Design Professional(s)" in the rendering of or failure to render "Professional Services".

I.   "Mediation" means non-binding intervention by a neutral third party.

J.   "Named Insured" means the partnership, firm or corporation named in Item 1 of the Declarations, and includes any and all affiliates, divisions, subsidiary corporations, or subsidiary limited liability companies thereof, and any other legal entity in which you have fifty percent or more ownership.

K.   "Policy Period" means the period set forth in the Declarations, or any shorter period resulting from a termination of this policy.

L.   "Predecessor in Interest" means any prior entity whose assets have been acquired by you or whose partners, principals or shareholders have joined you and whose name has been provided in the application and for whose insurance you are responsible by written agreement.

M.   "Professional Liability Claim" means any demand received by an "Insured" seeking "Damages" for "Professional Services" and alleging liability or responsibility on the "Insured's" part or on the part of any entity for whom the "Insured" is legally responsible.

N.   "Professional Liability Claim Expenses" means "Claim Expenses".

O.   "Professional Services" for purposes of Coverage Part A means those services that the "Insured", a "Design Professional", or an entity providing services under contract to a "Design Professional", are qualified to perform for others in their capacity as an architect, engineer, landscape architect, land surveyor or planner, construction manager, a LEED accredited professional, interior designer/space planner, or as specifically described by endorsement to this policy.  "Professional Services" includes "Technology Services" to the extent provided in conjunction with the aforementioned capacities.

P.   "Professional Services" for purposes of Coverage Part B means those services that the "Design Professional", or an entity providing services under contract to the "Design Professional", are qualified to perform for others in their capacity as an architect, engineer, landscape architect, land surveyor or planner, construction manager, a LEED accredited professional, interior designer/space planner, or as specifically described by endorsement to this policy.  "Professional Services" includes "Technology Services" to the extent provided in conjunction with the aforementioned capacities.

Q.   "Property Damage" means:

1.   Physical injury to or destruction of tangible property including the resulting loss of use thereof;

2.   Loss of use of tangible property that has not been physically injured or destroyed.

R.   "Protective Indemnity Claim" means a written demand by you against a "Design Professional(s)" under contract with you seeking a remedy from or alleging liability or responsibility on the part of such "Design Professional(s)" for "Loss" arising out of the "Design Professional's" rendering of or failure to render "Professional Services".

S.   "Retroactive Date" means the date on or after which any alleged or actual negligent act, error or omission giving rise to a "Protective Indemnity Claim", "Professional Liability Claim", "Loss" or "Damage" must have taken place in order to be considered for coverage under this policy, as stated in Item 5 of the Declarations.  If none is shown, the retroactive date will be the effective date of the first policy issued by us to you.

T.   "Technology Services" means the activities performed by or on behalf of the Insured including:

a.   website design or website programming;

b.   database design or database management, data warehousing, data application hosting;

c.   hosting, management or maintenance of websites designed or programmed;

d.   maintenance of computer programs, applications or systems designed or developed;

e.   design and development of computer software programs, applications or systems;

f.   creation, maintenance, use, modification, alteration, and input into any digital model or digital representation, including, for example, a Building Information Model (BIM) or other computer assisted design or drafting system or program; and

g.   electronic data transmission in conjunction with any of the above.

## III.  EXCLUSIONS

This insurance does not apply to "Damages" or "Losses" based upon or arising out of:

A.   any "Professional Liability Claim" or "Protective Indemnity Claim" made by any "Insured" against any other "Insured;"

B.   any "Professional Liability Claim" made by, or any "Protective Indemnity Claim" brought against, any individual or entity or its subrogees or assignees:

(1)   that wholly or partially owns or operates you; or

(2)   in which you have an ownership interest in excess of 20 percent; or

(3)   that is controlled or operated by you; or

(4)   in which the "Insured" is an officer or director;

C. the refusal to employ, termination of employment, coercion, evaluation, reassignment, discipline, wrongful infliction of emotional distress or other employment-related torts, harassment, discrimination, wrongful deprivation of a career opportunity, breach of any oral, written or implied employment contract or quasi-employment contract, violation of any federal, state or local statute, regulation, ordinance, common law or public policy concerning employment or discrimination in employment;

D. any obligation for which the "Insured" or any carrier as insurer shall be liable under any workers' compensation, unemployment compensation, employer's liability, disability benefits law or under any similar law;

E. any conduct by an individual, corporation, limited liability company, partnership or joint venture of which the "Insured" is a partner, director, officer, member, participant or employee, that is not designated in the Declarations, policy form, or endorsement as a "Insured", except that this exclusion shall not apply to the "Insured's" legal liability resulting from performance of its responsibilities on behalf of the respective individual, corporation, limited liability company, partnership or joint venture;

F. any express warranty or guarantee except to the extent such liability would have attached by law in the absence of such warranty or guarantee;

G. liability of others assumed by an "Insured" or a "Design Professional" under any contract or agreement, unless such liability would have attached by law in the absence of such agreement because of a negligent act, error or omission of the "Design Professional" or "Insured" or any other person, entity or organization for whom the "Design Professional' or "Insured" is legally responsible, and the liability arises out of the rendering of or failure to render "Professional Services".

H. any project that is insured under a project specific insurance policy, provided, however, that this exclusion shall not apply where your liability is found to be in excess of the limit of liability available under such project specific insurance policy which has been specifically included for excess coverage by endorsement to this policy;

I. the design or manufacture of any goods or products which are sold or supplied by the "Insured", the "Design Professional," or by others under license from the "Insured" or the "Design Professional";

J. fines, penalties, and the multiple portion of multiplied damages;

K. cost estimates being exceeded.  This exclusion shall not apply to those "Damages" or "Losses" which arise out of a negligent act, error or omission in the rendering of or failure to render "Professional Services";

L. any dishonest, fraudulent, criminal, intentional or malicious act, error or omission or those of a knowingly wrongful nature, except that this exclusion shall not apply to an "Insured" who did not commit, participate in, or have knowledge of such conduct;

M. the cost to repair or replace faulty workmanship in any construction, erection, fabrication, installation, assembly or manufacturing process performed or provided by an "Insured" or anyone for whom any "Insured" is legally responsible, including materials, parts or equipment furnished in connection therewith, including any workmanship which is not in accordance with the drawings and specifications with respect to any construction, erection, fabrication, installation, assembly or manufacturing process.  This exclusion shall not apply to those "Damages" or "Losses" which result from a negligent act, error or omission in the rendering of or failure to render "Professional Services" by an "Insured" or others for whom the "Insured" is legally responsible;

N. "Bodily Injury" and "Property Damage" arising out of job site safety, including the failure to protect any property or persons or the preparation or failure to prepare any safety precautions or procedures in connection with any project;

O. attorney fees and related expenses incurred by you resulting from the investigation, adjustment, appeal or making of a "Protective Indemnity Claim" against a "Design Professional";

P. with respect to a "Protective Indemnity Claim" only, any amount awarded by default judgment or other proceeding in which any "Design Professional" has failed to answer, plead and otherwise defend itself or indemnify you. However this exclusion shall not apply if the "Insured" cooperates with us to determine what the "Loss" would have been in the absence of such default judgment or other proceeding in which any "Design Professional" failed to answer, plead or otherwise defend itself;

Q. a settlement which has been reached without our express written consent;

R.   war, invasion, act of foreign enemy, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection or military or usurped power, strike, riot, civil commotion, or terrorism, including any act which is certified by the United States Secretary of the Treasury as an "act of terrorism", as defined by the Terrorism Risk Insurance Act of 2002 or any amendment thereto;

S.   "Bodily Injury" or "Property Damage" arising out of construction means, methods, techniques, sequences and procedures; and

T.   any failure to prevent unauthorized access to or use of an electronic system or program, unless such unauthorized access arises out of a negligent act, error or omission in the rendering of or failure to render "Professional Services" by you or by any entity for which you are legally responsible.

## IV.   LIMITS OF LIABILITY

### A.   COVERAGE PART A

1.   EACH PROFESSIONAL LIABILITY CLAIM LIMIT OF LIABILITY

Our liability for each "Professional Liability Claim" including "Damages" and "Professional Liability Claim Expenses" shall not exceed the amount set out in the Declarations as Each "Professional Liability Claim" Limit of Liability - Coverage Part A.  The available Each "Professional Liability Claim" Limit of Liability under the policy is reduced by the payment of "Damages" and "Professional Liability Claim Expenses".  We shall not be obligated to pay any "Damages" or "Professional Liability Claim Expenses" or undertake or continue the defense of any "Professional Liability Claim" after the Each "Professional Liability Claim" Limit of Liability has been tendered into court or exhausted by payment of "Damages" or "Professional Liability Claim Expenses".

2.   SELF INSURED RETENTION

Our liability and obligation to you for "Damages" and "Professional Liability Claim Expenses" under Coverage Part A for each "Professional Liability Claim" shall attach excess of the Self Insured Retention – Coverage Part A stated in the Declarations.  The Self Insured Retention shall apply to each "Professional Liability Claim".

### B.   COVERAGE PART B

1.   EACH PROTECTIVE INDEMNITY CLAIM LIMIT OF LIABILITY

Our liability for each "Protective Indemnity Claim" for "Loss" shall not exceed the amount set out in the Declarations as the Each "Protective Indemnity Claim" Limit of Liability - Coverage Part B. The available Each "Protective Indemnity Claim" Limit of Liability under the policy is reduced by the payment of "Loss" by us under this policy.  We shall not be obligated to pay any "Loss" after the Each "Protective Indemnity Claim" Limit of Liability has been tendered into court or exhausted by payment of "Loss".

2.   SELF INSURED RETENTION

Our liability and obligation to indemnify you for "Loss" under Coverage Part B attaches upon full payment of the amount(s) of the "Design Professional's Insurance".  In the event the "Design Professional's Insurance" is unavailable through either exhaustion of its limits or through the applicability of a valid exclusion under the "Design Professional's Insurance" then our liability and obligation to indemnify you shall attach excess of the Self Insured Retention - Coverage Part B stated in the Declarations.  The Self Insured Retention shall apply to each "Protective Indemnity Claim".

### C.   AGGREGATE LIMIT OF LIABILITY

Our total liability for all "Damages", "Losses" and "Claim Expenses" under Coverage Parts A, B and any endorsed coverage parts combined shall not exceed the amount set forth in the Declarations as the Aggregate Limit of Liability.  The available Aggregate Limit of Liability under the policy is reduced by the payment of "Damages", "Losses" and "Claim Expenses".  We shall not be obligated to pay any "Damages", "Losses", or "Professional Liability Claims Expenses" after the Aggregate Limit of Liability has been tendered into court or exhausted by payments for "Damages", "Losses" or "Claim Expenses".

### D.   MULTIPLE INSUREDS, CLAIMS, CLAIMANTS AND POLICY PERIOD(S)

1.   ONE LIMIT OF LIABILITY / SELF INSURED RETENTION

The inclusion of more than one "Insured" in the making of a single "Claim" or "Protective Indemnity Claim", or the bringing of multiple suits regarding the same negligent act, error or omission shall not increase our Limit of Liability; neither shall the making of "Claims" or the bringing of suits by more than one person or organization.  Two or more "Claims" or "Protective Indemnity Claims" under Coverage Parts A, B and any endorsed coverage parts or a combination of Coverage Parts A, B, and any endorsed coverage parts, arising out of the same, interrelated, associated, repeated or continuous negligent act, error or omission or a series of related negligent acts, errors or omissions shall be treated as a single "Claim" and shall be subject to the same Limit of Liability and only one Self Insured Retention (if a single coverage part only), or one Limit of Liability and one Self Insured Retention for each applicable Coverage Part if multiple coverage parts are involved.   Any payments under one Coverage Part shall not be recoverable under another Coverage Part.

2.   TWO OR MORE POLICY PERIODS

Any "Claim" or "Protective Indemnity Claim" which takes place over two or more "Policy Periods" shall be subject to only one Limit of Liability and one Self Insured Retention (if a single coverage part only).  Any such "Claim" or "Protective Indemnity Claim" involving more than one Coverage Part shall be subject to only one Limit of Liability, and one Self Insured Retention per applicable coverage part.  All such "Claims" or "Protective Indemnity Claims", whenever made, shall be considered first made on the date on which the earliest "Claim" or "Protective Indemnity Claim" was first reported to us and the Limit of Liability and Self Insured Retention applicable to that "Policy Period" shall apply.

## V.   CLAIM PROVISIONS

### A.   PROFESSIONAL LIABILITY CLAIMS AND OTHER "CLAIMS"

1.   NOTICE OF CLAIM

A.   In the event of a "Claim", prompt written notice containing particulars sufficient to identify you or any "Insured" involved and reasonably obtainable information with respect to time, place and circumstances, and the names and addresses of any injured parties and of available witnesses, shall be given by or for you to us.  Written notice must be provided to us no later than 60 days after the expiration or termination of the policy or as provided under Optional Extended Reporting Period under Section VI of this policy, if purchased.  Your knowledge of a "Claim" shall be deemed to have occurred when an individual acting in a capacity as legal counsel or risk manager, or a principal, partner, director, or executive officer first learned of the "Claim".

B.   No costs, charges or related "Claim Expenses" shall be incurred without our written consent, which shall not be unreasonably withheld.

The "Insured" shall do nothing to prejudice our rights under this policy nor shall the "Insured" admit liability or settle any "Claim" without our written consent.  If we recommend a reasonable settlement of a "Claim", the "Insured" shall have the opportunity to concur, such concurrence not to be unreasonably withheld.  If we recommend a reasonable settlement of a "Claim":

1.   for an amount within the Self Insured Retention and an "Insured" refuses to concur with such reasonable settlement, then we shall not be liable for any "Damages" or "Claims Expenses" in excess of the Self Insured Retention; or

2.   for a total amount in excess of the balance of the Self Insured Retention and the "Insured" refuses to concur with such reasonable settlement acceptable to the claimant, then our liability for "Damages" and "Claim Expenses" shall be limited to that portion of the recommended settlement and the costs, charges and expenses incurred as of the date of an "Insured's" refusal, which exceed the Self Insured Retention and fall within the Limit of Liability.

C.   The "Insured" shall assist and cooperate with us in the investigation, settlement and defense of all "Claims" made against the "Insured" and upon our request shall authorize the release of records and other information, secure and give evidence, attend hearings and trials and obtain the location of and cooperation of witnesses.

D.   In the event that an "Insured" is entitled by law to select independent counsel to defend an "Insured" at our expense, the attorney's fees and all other litigation expenses we must pay to that counsel are limited to the rates we actually pay to counsel we retain in the ordinary course of business in the defense of similar "Claims" in the community where the "Claim" arose or is being defended.

Additionally, we may exercise the right to require that such counsel have certain minimum qualifications with respect to their legal competency including experience in defending "Claims" similar to the one pending against an "Insured" and to require such counsel to have errors and omissions insurance coverage.   The "Insured" agrees that such counsel will respond to our request for information regarding the "Claim" in a timely manner.  Furthermore, an "Insured" may at anytime, by its signed consent, waive its right to select independent counsel.

2.   NOTICE OF CIRCUMSTANCE

If during the "Policy Period", the "Insured" becomes aware of an actual or alleged negligent act, error or omission which may be expected to give rise to a "Professional Liability Claim" or "Claim" under the policy, and the "Insured" provides written notice to us, prior to the expiration of the policy period and containing particulars sufficient to identify the "Insured" and reasonably obtainable information with respect to:

A.   the time, place and explanation of the actual or alleged negligent act, error or omission including how the "Insured" first became aware of the actual or alleged negligent act, error or omission;

B.   the name and addresses of any injured parties and available witnesses and the "Damages" which have or may result from such actual or alleged negligent act, error or omission;

C.   any and all investigative or engineering reports, data or information about the actual or alleged negligent act, error or omission, or "Damages"; and

D.   copies of any relevant contracts between the "Insured" and its client for "Professional Services".

then any "Claim", for which coverage is provided by this policy, that may be made against the "Insured" shall be deemed for the purposes of this insurance to have been made on the date on which the notice was given to us.  In such event the "Insured" agrees to cooperate fully with us and do all things reasonably necessary to allow us to investigate such notice of circumstance and mitigate to the fullest extent possible the resultant "Damages", if any.  At our sole discretion, we may elect to investigate any circumstance which is reported to us. Any costs associated with the investigation of a circumstance prior to a "Claim" being made will not be considered "Claim Expenses".  These costs shall not be applied toward reducing the applicable Self Insured Retention and are in addition to the Limit of Liability and shall be borne by us.

## B.  PROTECTIVE INDEMNITY CLAIM PROVISION

1.   NOTICE OF PROTECTIVE INDEMNITY CLAIM

A.   As a condition precedent to Coverage Part B of this policy, you shall provide us with notice in writing of a "Protective Indemnity Claim" at the same time that you make such "Protective Indemnity Claim" against a "Design Professional".

B.   We have the right but not the duty to participate in the investigation or settlement of a "Protective Indemnity Claim" covered under Coverage Part B of this policy.  Whether or not we choose to participate in the settlement of a "Protective Indemnity Claim," the "Insured" shall make every effort, within reason, to obtain from the "Design Professional(s)" party to such settlement an assignment of any rights said "Design Professional(s)" has against any other "Design Professional(s)" to pursue claims that are related to or arising from the negligent act(s), error(s) or omission(s) included in the "Professional Indemnity Claim" and settlement.

C.   You shall not enter negotiations or settlement of a "Protective Indemnity Claim" with the "Design Professional" or its representative involving any part of the Limit of Liability of this policy without our knowledge and consent to such negotiation and settlement.  However, we may, in writing, and at our election, waive our participation and consent to such negotiation and settlement.

D.   If we elect to participate in the negotiation and settlement of a "Protective Indemnity Claim", you shall fully cooperate with our requests for information.  Your duty to cooperate with us is a condition precedent to coverage under this policy and your failure to cooperate shall relieve us of our obligations and liability under this policy.

N.   "Professional Liability Claim Expenses" means "Claim Expenses".

O.   "Professional Services" for purposes of Coverage Part A means those services that the "Insured", a "Design Professional", or an entity providing services under contract to a "Design Professional", are qualified to perform for others in their capacity as an architect, engineer, landscape architect, land surveyor or planner, construction manager, a LEED accredited professional, interior designer/space planner, or as specifically described by endorsement to this policy.  "Professional Services" includes "Technology Services" to the extent provided in conjunction with the aforementioned capacities.

P.   "Professional Services" for purposes of Coverage Part B means those services that the "Design Professional", or an entity providing services under contract to the "Design Professional", are qualified to perform for others in their capacity as an architect, engineer, landscape architect, land surveyor or planner, construction manager, a LEED accredited professional, interior designer/space planner, or as specifically described by endorsement to this policy.  "Professional Services" includes "Technology Services" to the extent provided in conjunction with the aforementioned capacities.

Q.   "Property Damage" means:

   1.   Physical injury to or destruction of tangible property including the resulting loss of use thereof;

   2.   Loss of use of tangible property that has not been physically injured or destroyed.

R.   "Protective Indemnity Claim" means a written demand by you against a "Design Professional(s)" under contract with you seeking a remedy from or alleging liability or responsibility on the part of such "Design Professional(s)" for "Loss" arising out of the "Design Professional's" rendering of or failure to render "Professional Services".

S.   "Retroactive Date" means the date on or after which any alleged or actual negligent act, error or omission giving rise to a "Protective Indemnity Claim", "Professional Liability Claim", "Loss" or "Damage" must have taken place in order to be considered for coverage under this policy, as stated in Item 5 of the Declarations.  If none is shown, the retroactive date will be the effective date of the first policy issued by us to you.

T.   "Technology Services" means the activities performed by or on behalf of the Insured including:

   a.   website design or website programming;

   b.   database design or database management, data warehousing, data application hosting;

   c.   hosting, management or maintenance of websites designed or programmed;

   d.   maintenance of computer programs, applications or systems designed or developed;

   e.   design and development of computer software programs, applications or systems;

   f.   creation, maintenance, use, modification, alteration, and input into any digital model or digital representation, including, for example, a Building Information Model (BIM) or other computer assisted design or drafting system or program; and

   g.   electronic data transmission in conjunction with any of the above.

## III.   EXCLUSIONS

This insurance does not apply to "Damages" or "Losses" based upon or arising out of:

A.   any "Professional Liability Claim" or "Protective Indemnity Claim" made by any "Insured" against any other "Insured;"

B.   any "Professional Liability Claim" made by, or any "Protective Indemnity Claim" brought against, any individual or entity or its subrogees or assignees:

   (1)   that wholly or partially owns or operates you; or

   (2)   in which you have an ownership interest in excess of 20 percent; or

   (3)   that is controlled or operated by you; or

   (4)   in which the "Insured" is an officer or director;

C.   the refusal to employ, termination of employment, coercion, evaluation, reassignment, discipline, wrongful infliction of emotional distress or other employment-related torts, harassment, discrimination, wrongful deprivation of a career opportunity, breach of any oral, written or implied employment contract or quasi-employment contract, violation of any federal, state or local statute, regulation, ordinance, common law or public policy concerning employment or discrimination in employment;

D.   any obligation for which the "Insured" or any carrier as insurer shall be liable under any workers' compensation, unemployment compensation, employer's liability, disability benefits law or under any similar law;

E.   any conduct by an individual, corporation, limited liability company, partnership or joint venture of which the "Insured" is a partner, director, officer, member, participant or employee, that is not designated in the Declarations, policy form, or endorsement as a "Insured", except that this exclusion shall not apply to the "Insured's" legal liability resulting from performance of its responsibilities on behalf of the respective individual, corporation, limited liability company, partnership or joint venture;

F.   any express warranty or guarantee except to the extent such liability would have attached by law in the absence of such warranty or guarantee;

G.   liability of others assumed by an "Insured" or a "Design Professional" under any contract or agreement, unless such liability would have attached by law in the absence of such agreement because of a negligent act, error or omission of the "Design Professional" or "Insured" or any other person, entity or organization for whom the "Design Professional' or "Insured" is legally responsible, and the liability arises out of the rendering of or failure to render "Professional Services".

H.   any project that is insured under a project specific insurance policy, provided, however, that this exclusion shall not apply where your liability is found to be in excess of the limit of liability available under such project specific insurance policy which has been specifically included for excess coverage by endorsement to this policy;

I.   the design or manufacture of any goods or products which are sold or supplied by the "Insured", the "Design Professional," or by others under license from the "Insured" or the "Design Professional";

J.   fines, penalties, and the multiple portion of multiplied damages;

K.   cost estimates being exceeded.  This exclusion shall not apply to those "Damages" or "Losses" which arise out of a negligent act, error or omission in the rendering of or failure to render "Professional Services";

L.   any dishonest, fraudulent, criminal, intentional or malicious act, error or omission or those of a knowingly wrongful nature, except that this exclusion shall not apply to an "Insured" who did not commit, participate in, or have knowledge of such conduct;

M.   the cost to repair or replace faulty workmanship in any construction, erection, fabrication, installation, assembly or manufacturing process performed or provided by an "Insured" or anyone for whom any "Insured" is legally responsible, including materials, parts or equipment furnished in connection therewith, including any workmanship which is not in accordance with the drawings and specifications with respect to any construction, erection, fabrication, installation, assembly or manufacturing process.  This exclusion shall not apply to those "Damages" or "Losses" which result from a negligent act, error or omission in the rendering of or failure to render "Professional Services" by an "Insured" or others for whom the "Insured" is legally responsible;

N.   "Bodily Injury" and "Property Damage" arising out of job site safety, including the failure to protect any property or persons or the preparation or failure to prepare any safety precautions or procedures in connection with any project;

O.   attorney fees and related expenses incurred by you resulting from the investigation, adjustment, appeal or making of a "Protective Indemnity Claim" against a "Design Professional";

P.   with respect to a "Protective Indemnity Claim" only, any amount awarded by default judgment or other proceeding in which any "Design Professional" has failed to answer, plead and otherwise defend itself or indemnify you. However this exclusion shall not apply if the "Insured" cooperates with us to determine what the "Loss" would have been in the absence of such default judgment or other proceeding in which any "Design Professional" failed to answer, plead or otherwise defend itself;

Q.   a settlement which has been reached without our express written consent;

R.   war, invasion, act of foreign enemy, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection or military or usurped power, strike, riot, civil commotion, or terrorism, including any act which is certified by the United States Secretary of the Treasury as an "act of terrorism", as defined by the Terrorism Risk Insurance Act of 2002 or any amendment thereto;

S.   "Bodily Injury" or "Property Damage" arising out of construction means, methods, techniques, sequences and procedures; and

T.   any failure to prevent unauthorized access to or use of an electronic system or program, unless such unauthorized access arises out of a negligent act, error or omission in the rendering of or failure to render "Professional Services" by you or by any entity for which you are legally responsible.

## IV.   LIMITS OF LIABILITY

### A.   COVERAGE PART A

1.   EACH PROFESSIONAL LIABILITY CLAIM LIMIT OF LIABILITY

Our liability for each "Professional Liability Claim" including "Damages" and "Professional Liability Claim Expenses" shall not exceed the amount set out in the Declarations as Each "Professional Liability Claim" Limit of Liability - Coverage Part A.  The available Each "Professional Liability Claim" Limit of Liability under the policy is reduced by the payment of "Damages" and "Professional Liability Claim Expenses".  We shall not be obligated to pay any "Damages" or "Professional Liability Claim Expenses" or undertake or continue the defense of any "Professional Liability Claim" after the Each "Professional Liability Claim" Limit of Liability has been tendered into court or exhausted by payment of "Damages" or "Professional Liability Claim Expenses".

2.   SELF INSURED RETENTION

Our liability and obligation to you for "Damages" and "Professional Liability Claim Expenses" under Coverage Part A for each "Professional Liability Claim" shall attach excess of the Self Insured Retention – Coverage Part A stated in the Declarations.  The Self Insured Retention shall apply to each "Professional Liability Claim".

### B.   COVERAGE PART B

1.   EACH PROTECTIVE INDEMNITY CLAIM LIMIT OF LIABILITY

Our liability for each "Protective Indemnity Claim" for "Loss" shall not exceed the amount set out in the Declarations as the Each "Protective Indemnity Claim" Limit of Liability - Coverage Part B. The available Each "Protective Indemnity Claim" Limit of Liability under the policy is reduced by the payment of "Loss" by us under this policy.  We shall not be obligated to pay any "Loss" after the Each "Protective Indemnity Claim" Limit of Liability has been tendered into court or exhausted by payment of "Loss".

2.   SELF INSURED RETENTION

Our liability and obligation to indemnify you for "Loss" under Coverage Part B attaches upon full payment of the amount(s) of the "Design Professional's Insurance".  In the event the "Design Professional's Insurance" is unavailable through either exhaustion of its limits or through the applicability of a valid exclusion under the "Design Professional's Insurance" then our liability and obligation to indemnify you shall attach excess of the Self Insured Retention - Coverage Part B stated in the Declarations.  The Self Insured Retention shall apply to each "Protective Indemnity Claim".

### C.   AGGREGATE LIMIT OF LIABILITY

Our total liability for all "Damages", "Losses" and "Claim Expenses" under Coverage Parts A, B and any endorsed coverage parts combined shall not exceed the amount set forth in the Declarations as the Aggregate Limit of Liability.  The available Aggregate Limit of Liability under the policy is reduced by the payment of "Damages", "Losses" and "Claim Expenses".  We shall not be obligated to pay any "Damages", "Losses", or "Professional Liability Claims Expenses" after the Aggregate Limit of Liability has been tendered into court or exhausted by payments for "Damages", "Losses" or "Claim Expenses".

**D.   MULTIPLE INSUREDS, CLAIMS, CLAIMANTS AND POLICY PERIOD(S)**

1.   ONE LIMIT OF LIABILITY / SELF INSURED RETENTION

The inclusion of more than one "Insured" in the making of a single "Claim" or "Protective Indemnity Claim", or the bringing of multiple suits regarding the same negligent act, error or omission shall not increase our Limit of Liability; neither shall the making of "Claims" or the bringing of suits by more than one person or organization. Two or more "Claims" or "Protective Indemnity Claims" under Coverage Parts A, B and any endorsed coverage parts or a combination of Coverage Parts A, B, and any endorsed coverage parts, arising out of the same, interrelated, associated, repeated or continuous negligent act, error or omission or a series of related negligent acts, errors or omissions shall be treated as a single "Claim" and shall be subject to the same Limit of Liability and only one Self Insured Retention (if a single coverage part only), or one Limit of Liability and one Self Insured Retention for each applicable Coverage Part if multiple coverage parts are involved.  Any payments under one Coverage Part shall not be recoverable under another Coverage Part.

2.   TWO OR MORE POLICY PERIODS

Any "Claim" or "Protective Indemnity Claim" which takes place over two or more "Policy Periods" shall be subject to only one Limit of Liability and one Self Insured Retention (if a single coverage part only).  Any such "Claim" or "Protective Indemnity Claim" involving more than one Coverage Part shall be subject to only one Limit of Liability, and one Self Insured Retention per applicable coverage part.  All such "Claims" or "Protective Indemnity Claims", whenever made, shall be considered first made on the date on which the earliest "Claim" or "Protective Indemnity Claim" was first reported to us and the Limit of Liability and Self Insured Retention applicable to that "Policy Period" shall apply.

# V.   CLAIM PROVISIONS

## A.   PROFESSIONAL LIABILITY CLAIMS AND OTHER "CLAIMS"

1.   NOTICE OF CLAIM

A.   In the event of a "Claim", prompt written notice containing particulars sufficient to identify you or any "Insured" involved and reasonably obtainable information with respect to time, place and circumstances, and the names and addresses of any injured parties and of available witnesses, shall be given by or for you to us.  Written notice must be provided to us no later than 60 days after the expiration or termination of the policy or as provided under Optional Extended Reporting Period under Section VI of this policy, if purchased.  Your knowledge of a "Claim" shall be deemed to have occurred when an individual acting in a capacity as legal counsel or risk manager, or a principal, partner, director, or executive officer first learned of the "Claim".

B.   No costs, charges or related "Claim Expenses" shall be incurred without our written consent, which shall not be unreasonably withheld.

The "Insured" shall do nothing to prejudice our rights under this policy nor shall the "Insured" admit liability or settle any "Claim" without our written consent.  If we recommend a reasonable settlement of a "Claim", the "Insured" shall have the opportunity to concur, such concurrence not to be unreasonably withheld.  If we recommend a reasonable settlement of a "Claim":

1.   for an amount within the Self Insured Retention and an "Insured" refuses to concur with such reasonable settlement, then we shall not be liable for any "Damages" or "Claims Expenses" in excess of the Self Insured Retention; or

2.   for a total amount in excess of the balance of the Self Insured Retention and the "Insured" refuses to concur with such reasonable settlement acceptable to the claimant, then our liability for "Damages" and "Claim Expenses" shall be limited to that portion of the recommended settlement and the costs, charges and expenses incurred as of the date of an "Insured's" refusal, which exceed the Self Insured Retention and fall within the Limit of Liability.

C.   The "Insured" shall assist and cooperate with us in the investigation, settlement and defense of all "Claims" made against the "Insured" and upon our request shall authorize the release of records and other information, secure and give evidence, attend hearings and trials and obtain the location of and cooperation of witnesses.

D. In the event that an "Insured" is entitled by law to select independent counsel to defend an "Insured" at our expense, the attorney's fees and all other litigation expenses we must pay to that counsel are limited to the rates we actually pay to counsel we retain in the ordinary course of business in the defense of similar "Claims" in the community where the "Claim" arose or is being defended.

Additionally, we may exercise the right to require that such counsel have certain minimum qualifications with respect to their legal competency including experience in defending "Claims" similar to the one pending against an "Insured" and to require such counsel to have errors and omissions insurance coverage. The "Insured" agrees that such counsel will respond to our request for information regarding the "Claim" in a timely manner. Furthermore, an "Insured" may at anytime, by its signed consent, waive its right to select independent counsel.

2. NOTICE OF CIRCUMSTANCE

If during the "Policy Period", the "Insured" becomes aware of an actual or alleged negligent act, error or omission which may be expected to give rise to a "Professional Liability Claim" or "Claim" under the policy, and the "Insured" provides written notice to us, prior to the expiration of the policy period and containing particulars sufficient to identify the "Insured" and reasonably obtainable information with respect to:

A. the time, place and explanation of the actual or alleged negligent act, error or omission including how the "Insured" first became aware of the actual or alleged negligent act, error or omission;

B. the name and addresses of any injured parties and available witnesses and the "Damages" which have or may result from such actual or alleged negligent act, error or omission;

C. any and all investigative or engineering reports, data or information about the actual or alleged negligent act, error or omission, or "Damages"; and

D. copies of any relevant contracts between the "Insured" and its client for "Professional Services".

then any "Claim", for which coverage is provided by this policy, that may be made against the "Insured" shall be deemed for the purposes of this insurance to have been made on the date on which the notice was given to us. In such event the "Insured" agrees to cooperate fully with us and do all things reasonably necessary to allow us to investigate such notice of circumstance and mitigate to the fullest extent possible the resultant "Damages", if any. At our sole discretion, we may elect to investigate any circumstance which is reported to us. Any costs associated with the investigation of a circumstance prior to a "Claim" being made will not be considered "Claim Expenses". These costs shall not be applied toward reducing the applicable Self Insured Retention and are in addition to the Limit of Liability and shall be borne by us.

**B. PROTECTIVE INDEMNITY CLAIM PROVISION**

1. NOTICE OF PROTECTIVE INDEMNITY CLAIM

A. As a condition precedent to Coverage Part B of this policy, you shall provide us with notice in writing of a "Protective Indemnity Claim" at the same time that you make such "Protective Indemnity Claim" against a "Design Professional".

B. We have the right but not the duty to participate in the investigation or settlement of a "Protective Indemnity Claim" covered under Coverage Part B of this policy. Whether or not we choose to participate in the settlement of a "Protective Indemnity Claim," the "Insured" shall make every effort, within reason, to obtain from the "Design Professional(s)" party to such settlement an assignment of any rights said "Design Professional(s)" has against any other "Design Professional(s)" to pursue claims that are related to or arising from the negligent act(s), error(s) or omission(s) included in the "Professional Indemnity Claim" and settlement.

C. You shall not enter negotiations or settlement of a "Protective Indemnity Claim" with the "Design Professional" or its representative involving any part of the Limit of Liability of this policy without our knowledge and consent to such negotiation and settlement. However, we may, in writing, and at our election, waive our participation and consent to such negotiation and settlement.

D. If we elect to participate in the negotiation and settlement of a "Protective Indemnity Claim", you shall fully cooperate with our requests for information. Your duty to cooperate with us is a condition precedent to coverage under this policy and your failure to cooperate shall relieve us of our obligations and liability under this policy.

2.   NOTICE OF CIRCUMSTANCE

Circumstance reporting is not afforded under this coverage part.

## C.   REPORTING PROVISIONS

All notices of "Claims" or circumstances, and "Protective Indemnity Claims" are to be submitted to the following address:

**Construction Professional Liability Claims Manager**
**Steadfast Insurance Company (or name of insurance company used)**
**P.O. Box 968041**
**Schaumburg, IL  60196**
**Fax number: (866) 255-2962**

New matters may also be reported via email at:
**USZ_Zurich_Construction_Professional_Claims@zurichna.com**

## VI.   EXTENDED REPORTING PERIOD

### A.   AUTOMATIC EXTENDED REPORTING PERIOD

If we or you terminate or non-renew this insurance for any reason, other than nonpayment of premium or your failure to comply with any term or condition, or your fraud or material misrepresentation, you shall be entitled to a period of sixty (60) days from the date of policy termination to report "Professional Liability Claims" or "Claims" which are made against you prior to such termination date. This Automatic Extended Reporting Period may not be canceled by us and does not require the payment of an additional premium.  This Automatic Extended Reporting Period shall be included within the Optional Extended Reporting Period if such is purchased.

### B.   OPTIONAL EXTENDED REPORTING PERIOD

If we or you terminate or non-renew this insurance for any reason, other than nonpayment of premium or your failure to comply with any term or condition, or your fraud or material misrepresentation, upon the payment of an additional premium, you shall have the option to:

a)   extend the period by which a "Professional Liability Claim" or "Claim" can be made against you and reported to us; and

b)   extend the period by which a "Protective Indemnity Claim" can be brought by you against a "Design Professional" and reported to us.

Selection of the Optional Reporting Period will include the extension of both a) and b) noted above.

"Professional Liability Claims" or "Claims" must be made and reported within the "Policy Period" or the Optional Extended Reporting Period, provided that the negligent act, error or omission giving rise to the "Professional Liability Claims" or "Claims", occurred on or after the Retroactive Date, if any and before the end of the "Policy Period".

"Protective Indemnity Claims" first made by you against a "Design Professional" and reported in writing to us during the "Policy Period" or the Optional Extended Reporting Period; provided that the negligent act, error or omission arises out of "Professional Services" performed for you by the "Design Professional" and has occurred on or after the Retroactive Date, if any and before the end of the "Policy Period".

The premium for the Optional Extended Reporting Period shall be determined by charging (1) 100% of the annual premium for twelve (12) months, (2) 150% for twenty-four (24) months, or (3) 200% for thirty-six (36) months.  The purchase of an Optional Extended Reporting Period shall be endorsed herein.

Your right to purchase the Optional Extended Reporting Period must be exercised by notice in writing not later than thirty (30) days after the cancellation or termination date of this policy.  Effective notice must indicate the total Optional Extended Reporting Period desired and must include payment of premium for such period.  If such notice and the premium are not mailed to us within thirty (30) days, then you shall not at a later date be entitled to purchase an Optional Extended Reporting Period.

At the commencement of any Optional Extended Reporting Period, the entire premium shall be deemed fully earned, and in the event you terminate the Optional Extended Reporting Period before its term for any reason, we shall not be obligated to return to you any portion of the premium.

The fact that the period during which "Professional Liability Claims", "Claims", and "Protective Indemnity Claims" can be reported to us is extended by virtue of the Optional Extended Reporting Period shall not in any way increase the Limit of Liability of this policy.

## VII. CONDITIONS

### A. ACTION AGAINST US

1. As to Coverage A and any coverage parts otherwise defined by endorsement to this policy, no action shall lie against us unless, as a condition precedent thereto, there shall have been full compliance with all of the terms and conditions of this policy, and both your liability and the amount of your obligations to pay has been finally determined either by judgment against you after an actual trial or by your written agreement with the claimant or the claimant's legal representative with our prior approval.

   Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join us in as a party to any action against you to determine your liability, nor shall we be impleaded by you or your legal representative.

2. As to Coverage B, no legal action may be brought against us until there has been full compliance with all the terms and conditions of this policy and both the "Design Professional's" liability and the amount of the "Design Professional's" obligations to pay have been finally determined either by judgment against the "Design Professional" after an actual trial, adjudication or arbitration or by your written agreement with the "Design Professional" with our prior approval.

   No person or organization has a right under this policy to bring us into any action to determine our liability or the "Design Professional's" liability.

### B. ASSIGNMENT

Assignment of interest under this policy shall not bind us without our express written consent.

### C. AUDIT AND INSPECTION

We shall be permitted upon reasonable prior notice to audit the "Insured's" final books and records at any time during the "Policy Period" and within three years after the final termination of this policy, as far as they relate to the subject matter of this policy. We shall also be permitted upon reasonable prior notice to inspect, sample and monitor on a continuing basis the "Insured's" operations. Neither our right to make inspections, sample and monitor nor the actual undertaking thereof nor any report thereon shall constitute an undertaking, on behalf of us or others, to determine or warrant that operations are safe, healthful or conform to acceptable engineering practice or are in compliance with any law, rule or regulation.

### D. BANKRUPTCY

The "Named Insured's" bankruptcy or insolvency shall not relieve us of our obligations under this policy. Your bankruptcy, insolvency, inability to pay, failure to pay, or refusal to pay the Self Insured Retention will not increase our obligations under this policy. In the event there is insurance, whether or not applicable to a "Professional Liability Claim" or "Protective Indemnity Claim" within a Self Insured Retention, you will continue to be responsible for the full amount of the applicable Self Insured Retention before limits of insurance under this policy apply. In no case will we be required to pay the Self Insured Retention or any portion thereof. Our obligations will attach only when the entire amount of the applicable Self Insured Retention has been paid and then only in excess of the Self Insured Retention and not in excess of the Limits of Insurance adjusted for any reduction in the aggregate limit of our liability.

### E. CANCELLATION

1. The policy may only be canceled by us for any of the following reasons:

   a. Non-payment of premium;

   b. A material misrepresentation or concealment of facts; or

   c. A material breach of any provision of the policy.

If this policy is canceled by us, notice of cancellation will be sent in writing to the "Named Insured", at the address indicated on the Declarations.  We will provide such written notice at least thirty (30) days prior to the date such cancellation is to take effect.

The effective date and hour of cancellation will be stated in such notice.  Cancellation by us also cancels the Extended Reporting Period.  The "Policy Period", the Automatic Extended Reporting Period and the Optional Extended Reporting Period will end on that date.  If we cancel for the reason specified in 1a, there shall be no return premium.  If we cancel for reasons stated in 1b. or 1c., the earned premium shall be computed pro-rata of the policy term premium.  Payment of any return premium shall not be a condition of cancellation.

2.   You may cancel this policy by surrendering to us, or by mailing to us, written notice requesting cancellation and stating when thereafter such cancellation shall take effect.  If canceled by you, we shall retain the customary short rate proportion of the premium.

3.   It is agreed that this policy will automatically terminate upon your acquisition by another entity or your merger into another entity, such that the "Named Insured" is not the surviving entity, or your consolidation with another entity, or the acquisition of substantially all of your assets by another entity.

## F.   CHANGES

The terms and conditions of this policy may only be altered by an endorsement issued by us.

## G.   CHOICE OF LAW AND JURISDICTION

In the event an "Insured" and we dispute the meaning, interpretation or operation of any term, condition, definition or provision of this policy resulting in litigation, arbitration or other form of dispute resolution, the "Insured" agrees with us that the law of the State of New York shall apply without giving effect to any conflicts or choice of law principles.  In the event an "Insured" and we agree to resolve any dispute by arbitration, any such arbitration shall be in accordance with the Commercial Arbitration Rules of the American Arbitration Association.

## H.   DESIGN PROFESSIONAL INSURANCE

You shall require that each Design Professional with whom you have a written contract initially evidence professional liability insurance.

## I.   LIMITATION OF LIABILITY

As respects Coverage Part B, the Insured shall not, without our express written authorization, accept any limitation of liability clause in a contract between the "Insured" and a "Design Professional" other than to limit the Design Professional's liability to the amount of the insurance specified by contract.

## J.   OTHER INSURANCE

Where other insurance is available to the "Insured" in addition to the "Design Professional's Insurance" for "Damages" or "Losses" covered under this policy, our obligation to the "Insured" is as follows:

1.   This insurance shall apply as excess over any other applicable insurance be it primary or excess.

2.   Where this insurance is excess over any other valid and collectible insurance, we will pay only our share of the amount of "Damages" or "Losses" if any, that exceeds the total amount that all such other insurance would pay for the "Damages" or "Losses" in the absence of this insurance.

3.   If other policies of insurance have been issued to the "Design Professional" which provide similar coverage for a "Claim" under this policy, in whole or in part, this policy shall apply in excess of those policies and this policy shall not contribute with such policies.

This provision shall not apply if other insurance is purchased by you specifically as excess of this insurance.

## K.   REPRESENTATIONS

By acceptance of this policy, you agree that the statements in the application and its attachments are your agreements and representations, that this policy is issued in reliance upon the truth of such representations, and that this policy, its Declarations and endorsements embody all agreements existing between you and us relating to this insurance.

**L.   SEVERABILITY**

Except with respect to the Limit of Liability, and any rights or duties specifically assigned to you, this insurance applies:

1.   as if each "Named Insured" were the only "Named Insured", and

2    separately to each "Insured" against whom a "Professional Liability Claim" is made.

Misrepresentation, concealment, breach of condition or violation of any duty under this policy by one "Insured" shall not prejudice the interest or coverage of another "Insured" under this policy.

**M.   SOLE AGENT**

If there is more than one "Insured" named in this policy, the first "Named Insured" shall act on behalf of all "Insureds" for all purposes, including but not limited to the payment or return of premium, payment of any self insured retention, receipt and acceptance of any endorsement issued to form a part of this policy, complying with all applicable claims provisions, giving and receiving notice of cancellation or nonrenewal, and the exercise of the rights provided in the Extended Reporting Period or Subrogation clause.

**N.   SUBROGATION AND TRANSFER OF RIGHTS OF RECOVERY**

If we make any payment under this policy, we shall be subrogated to all your rights against any person or organization, including the right to participate with the "Insured" in the exercise of all the "Insured's" rights of recovery.  You shall execute and deliver instruments and papers to us and do whatever else is necessary to secure such rights.  With respect to a "Protective Indemnity Claim," this includes a written transfer to us of any assignment(s) of rights obtained under section V. CLAIM PROVISIONS, B. PROTECTIVE INDEMNITY CLAIM PROVISIONS, paragraph 1.B. if the "Insured" has elected not to pursue same in furtherance of its "Protective Indemnity Claim".  An "Insured" shall do nothing to prejudice such rights as described in this paragraph.

We shall not exercise any such rights against any persons, firms or corporations included in the definition of an "Insured" or against your clients if, prior to a "Professional Liability Claim," a waiver of subrogation was so required and accepted under a specific contractual undertaking by you.

Any recovery obtained through subrogation, after expenses incurred in such subrogation are deducted by the party bearing the expense, reimbursement will be made in the following order:

1.   First, to any interest who has paid any amount in excess of the Limit of Liability provided under this policy;

2.   next, to us; and

3.   then to any interest as are entitled to claim the remainder, if any.

**O.   POLICY TERRITORY**

Coverage under this policy shall extend anywhere in the world, to the extent permitted by law.

**Endorsement #**  01

# Modified Retroactive Dates



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9487862-07 | 10/01/2018 | 10/01/2019 | 10/01/2018 | 18232000 | ---------- | ---------- |

**Named Insured and Mailing Address:**

LEND LEASE AMERICAS
200 PARK AVENUE
9TH FL
NEW YORK, NY  10166-0005

**Producer:**

MARSH USA INC
1166 AVENUE OF THE AMERICAS
NEW YORK, NY  10036-2708

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

In consideration of the premium already charged, it is hereby understood and agreed that Item 5 of the Declarations page is amended to read as follows:

| | |
|---|---|
| **Coverage Part A:** | 01/02/1900 |
| **Coverage Part B:** | 06/30/2011 |
| **Rectification Coverage:** | 06/30/2011 |

**Endorsement #**  02

# Additional Named Insured(s)



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9487862-07 | 10/01/2018 | 10/01/2019 | 10/01/2018 | 18232000 | ---------- | ---------- |

**Named Insured and Mailing Address:**

LEND LEASE AMERICAS
200 PARK AVENUE
9TH FL
NEW YORK, NY  10166-0005

**Producer:**

MARSH USA INC
1166 AVENUE OF THE AMERICAS
NEW YORK, NY  10036-2708

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

In consideration of the premium charged, it is agreed that Item 1. of the DECLARATIONS is amended to include the following:

Lend Lease (US) Healthcare Development Inc.    Solely with respect to this Additional Named Insured, a sub-limit of liability of $2,000,000 each "Claim"/$2,000,000 Aggregate Limit of Liability applies.  This sub-limit shall not operate to increase our Limits of Liability as set forth in in Item 2. of the Declarations to this policy.    Additionally, and solely with respect to this Additional Named Insured, the definition of "Professional Services" is amended to include:    real estate construction management; property management and; leasing services for others for a fee

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**Endorsement #**  03

# Choice of Counsel – Coverage Part A



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9487862-07 | 10/01/2018 | 10/01/2019 | 10/01/2018 | 18232000 | ---------- | ---------- |

**Named Insured and Mailing Address:**

LEND LEASE AMERICAS
200 PARK AVENUE
9TH FL
NEW YORK, NY  10166-0005

**Producer:**

MARSH USA INC
1166 AVENUE OF THE AMERICAS
NEW YORK, NY  10036-2708

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

In consideration of the premium charged, it is hereby understood and agreed that the following changes to the policy are made:

**Section I. INSURING AGREEMENT – COVERAGE PART A – CONTRACTOR'S PROFESSIONAL LIABILITY COVERAGE, Item B. DEFENSE IS DELETED IN ITS ENTIRETY AND REPLACED AS FOLLOWS:**

**B.  DEFENSE**

We have the right and duty to defend with counsel of our choice, any "Professional Liability Claim" seeking "Damages" to which Coverage Part A of this insurance applies.  However, the "Insured" shall, subject to our consent which shall not be unreasonably withheld, have the right and the duty to designate legal counsel for the investigation, defense or settlement of a "Claim".  "Professional Liability Claim Expenses" reduce the applicable Limit of Liability identified in the Declarations and as described in Section IV.A.2 SELF INSURED RETENTION.  Our duty to defend all "Claims" or pay any "Claim" amounts or "Professional Liability Claim Expenses" to which this insurance applies shall end when the applicable Limit of Liability has been exhausted by the payment of "Professional Liability Claim Expenses" or "Damages".

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**Endorsement #**  04

# Excess of Project Specific Insurance – Blanket



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9487862-07 | 10/01/2018 | 10/01/2019 | 10/01/2018 | 18232000 | ---------- | ---------- |

**Named Insured and Mailing Address:**

LEND LEASE AMERICAS
200 PARK AVENUE
9TH FL
NEW YORK, NY  10166-0005

**Producer:**

MARSH USA INC
1166 AVENUE OF THE AMERICAS
NEW YORK, NY  10036-2708

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**.

This endorsement modifies insurance provided under the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

In consideration of premium paid, we agree with you, subject to all terms, exclusions and conditions of the policy that:

I.   Pursuant to Section III. EXCLUSIONS, Item H. of the policy, this endorsement shall provide that this policy operate as an excess insurance policy over any Project Specific Professional Liability Policy providing similar insurance coverage for you, but only for "Professional Liability Claims" resulting from "Professional Services" provided by the "Insured" or any entity for which the "Insured" is legally liable for the project named on any Project Specific Professional Liability Policy and otherwise covered under the terms and conditions of this policy.

II.  The Self Insured Retention set forth in the Declarations shall apply to "Professional Liability Claims" covered by the excess insurance coverage provided by this endorsement.

III. As a condition precedent, this policy shall only apply when the limit(s) of insurance of a Project Specific Professional Liability policy is exhausted upon the actual payment of the limit(s) of insurance of the Project Specific Professional Liability Policy providing similar coverage.

IV.  Nothing contained herein shall operate to increase our Limits of Liability as set forth in the Declarations to the policy.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**.

**Endorsement #**  05

# Ninety (90) Day Cancellation



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9487862-07 | 10/01/2018 | 10/01/2019 | 10/01/2018 | 18232000 | ---------- | ---------- |

**Named Insured and Mailing Address:**

LEND LEASE AMERICAS
200 PARK AVENUE
9TH FL
NEW YORK, NY  10166-0005

**Producer:**

MARSH USA INC
1166 AVENUE OF THE AMERICAS
NEW YORK, NY  10036-2708

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

In consideration of the premium charged, it is hereby understood and agreed that Section VII. CONDITIONS, Item E. CANCELLATION is deleted in its entirety and replaced as follows:

1.  The policy may only be canceled by us for any of the following reasons:

    a.  Non-payment of premium;

    b.  A material misrepresentation or concealment of facts;

    c.  A material breach of any provision of the policy.

    If this policy is canceled by us, notice of cancellation will be sent in writing to the "Named Insured", at the address indicated on the Declarations.  We will provide such written notice at least ninety (90) days (thirty (30) days for non-payment of premium) prior to the date such cancellation is to take effect.

    The effective date and hour of cancellation will be stated in such notice.  Cancellation by us also cancels the Extended Reporting Period.  The "Policy Period", the Automatic Extended Reporting Period and the Optional Extended Reporting Period will end on that date.  If we cancel for the reason specified in 1a, there shall be no return premium.  If we cancel for reasons stated in 1b or 1c, the earned premium shall be computed pro-rata of the policy term premium.  Payment of any return premium shall not be a condition of cancellation.

2.  You may cancel this policy by surrendering to us, or by mailing to us, written notice requesting cancellation and stating when thereafter such cancellation shall take effect.  If cancelled by you, we shall retain the customary short rate proportion of the premium.

3.  It is agreed that this policy will automatically terminate upon your acquisition by another entity or your merger into another entity, such that the "Named Insured" is not the surviving entity, or your consolidation with another entity, or the acquisition of substantially all of your assets by another entity.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**Endorsement #**  06

# Prior Claims Exclusion



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9487862-07 | 10/01/2018 | 10/01/2019 | 10/01/2018 | 18232000 | ---------- | ---------- |

**Named Insured and Mailing Address:**

LEND LEASE AMERICAS
200 PARK AVENUE
9TH FL
NEW YORK, NY  10166-0005

**Producer:**

MARSH USA INC
1166 AVENUE OF THE AMERICAS
NEW YORK, NY  10036-2708

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

In consideration of the premium charged, it is agreed that this policy does not apply to any claim made by or against the following:

Any "Damages" arising from a "Professional Liability Claim" or "Loss" associated with a "Protective Indemnity Claim" related to the World Trade Center and surrounding properties resulting from the events of September 11, 2001.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**Endorsement #** 07



# Punitive Damages Where Allowable By Law

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9487862-07 | 10/01/2018 | 10/01/2019 | 10/01/2018 | 18232000 | ---------- | ---------- |

**Named Insured and Mailing Address:**

LEND LEASE AMERICAS
200 PARK AVENUE
9TH FL
NEW YORK, NY  10166-0005

**Producer:**

MARSH USA INC
1166 AVENUE OF THE AMERICAS
NEW YORK, NY  10036-2708

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

In consideration of the premium charged, it is hereby understood and agreed that Section III EXCLUSIONS, Item J. is deleted in its entirety and replaced as follows:

J.    fines or penalties and the multiple portion of multiplied damages.  However, this exclusion will not apply to punitive damages where allowable by law.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**Endorsement #**  08

# Modification Of Exclusion R - Deletion Of Terrorism Exclusion



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9487862-07 | 10/01/2018 | 10/01/2019 | 10/01/2018 | 18232000 | ---------- | ---------- |

**Named Insured and Mailing Address:**

LEND LEASE AMERICAS
200 PARK AVENUE
9TH FL
NEW YORK, NY  10166-0005

**Producer:**

MARSH USA INC
1166 AVENUE OF THE AMERICAS
NEW YORK, NY  10036-2708

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

In consideration of the premium charged, it is hereby understood and agreed that COVERAGE PART A., Section **III. EXCLUSIONS**, Exclusion R. is hereby deleted in its entirety and replaced with the following:

R.  war, invasion, act of foreign enemy, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection or military or usurped power, strike, riot, or civil commotion.

All other terms and conditions remain unchanged.

**Endorsement #**  09

# Reduced Self-Insured Retention and Indemnity Endorsement



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9487862-07 | 10/01/2018 | 10/01/2019 | 10/01/2018 | 18232000 | ---------- | ---------- |

**Named Insured and Mailing Address:**

LEND LEASE AMERICAS
200 PARK AVENUE
9TH FL
NEW YORK, NY  10166-0005

**Producer:**

MARSH USA INC
1166 AVENUE OF THE AMERICAS
NEW YORK, NY  10036-2708

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

If the "Insured" is required by contract to evidence a self-insured retention in an amount less than what is shown in Item 4 of the declarations page of this policy, then the "Insured" has the right to sign such contract and issue a certificate of insurance or other document showing a lesser self-insured retention, but only when required by contract.

It is hereby understood and agreed that if a claim is based on a contract requiring a lower self-insured retention than is shown in Item 4 of the declarations page of this policy, then the self-insured retention on this policy shall be amended to be the lesser amount; provided, however, the Insured agrees to indemnify the Company for the difference between the lesser self-insured retention amount required in the contract or on the certificate of insurance or other related document and the self-insured retention amount specified in Item 4 of the declarations page of this policy.

The Insured also agrees to reimburse the Company for all costs, expenses, and attorneys fees which may be incurred by the Company in enforcing this indemnity agreement.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY SHALL APPLY AND REMAIN UNCHANGED.**

Endorsement #  10

# Excess of Project Specific Insurance – Specific Project Coverage Part A – Contractor's Professional Liability



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9487862-07 | 10/01/2018 | 10/01/2019 | 10/01/2018 | 18232000 | ---------- | ---------- |

**Named Insured and Mailing Address:**

LEND LEASE AMERICAS
200 PARK AVENUE
9TH FL
NEW YORK, NY  10166-0005

**Producer:**

MARSH USA INC
1166 AVENUE OF THE AMERICAS
NEW YORK, NY  10036-2708

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

**PROJECT NAME:**    Hard Rock (217 57th St.), New York, NY

138 Willoughby, New York, NY

W 66th St. , New York, NY

Pathmark (250 South St.) , New York, NY (Coverage for this project excludes coverage for claims arising out of bronze panels.)

In consideration of premium paid, we agree with you, subject to all terms, exclusions and conditions of the policy that:

I.  Pursuant to Section III. EXCLUSIONS, Item H. of the policy, this endorsement shall provide for the project named above that this policy operate as an excess insurance policy over any Project Specific Professional Liability Policy providing similar insurance coverage for you, but only for "Professional Liability Claims" resulting from "Professional Services" provided by the "Insured" or any entity for which the "Insured" is legally liable for the project named on this endorsement and otherwise covered under the terms and conditions of this policy.

II.  The Self Insured Retention set forth in the Declarations shall apply to "Professional Liability Claims" covered by the excess insurance coverage provided by this endorsement.

III.  As a condition precedent, this policy shall only apply when the limit(s) of insurance of a Project Specific Professional Liability policy is exhausted upon the actual payment of the limit(s) of insurance of the Project Specific Professional Liability Policy providing similar coverage.

IV.  Nothing contained herein shall operate to increase our Limits of Liability as set forth in the Declarations to the policy.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

**Endorsement #**  11

# Rectification Indemnity Coverage



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9487862-07 | 10/01/2018 | 10/01/2019 | 10/01/2018 | 18232000 | ---------- | ---------- |

**Named Insured and Mailing Address:**

LEND LEASE AMERICAS
200 PARK AVENUE
9TH FL
NEW YORK, NY  10166-0005

**Producer:**

MARSH USA INC
1166 AVENUE OF THE AMERICAS
NEW YORK, NY  10036-2708

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

It is agreed that the following COVERAGE PART is added to the Policy, and that Sections II. DEFINITIONS, III. EXCLUSIONS, IV. LIMITS OF LIABILITY, V. CLAIM PROVISIONS, VI. EXTENDED REPORTING PERIOD, and VII. CONDITIONS shall also apply to coverage provided under this Endorsement.

**COVERAGE PART – RECTIFICATION INDEMNITY COVERAGE**

**I.   INSURING AGREEMENT**

    **A.  COVERAGE**

We shall indemnify the "Named Insured" for the "Named Insured's" "Actual and Necessary Costs and Expenses" incurred in rectifying a "Design Defect" in any part of the construction works or engineering works for any project upon which the "Named Insured" is responsible for both design and construction, provided that:

1.  The "Named Insured" reports "Actual and Necessary Costs and Expenses" for a "Design Defect" as soon as practicable after discovery of such "Design Defect" but in no event after any certificate of substantial completion has been issued;

2.  The "Named Insured" demonstrates to us that the "Actual and Necessary Cost and Expenses" arise out of the "Named Insured's" rendering of "Professional Services" which resulted in a "Design Defect" for which a third party could otherwise make a "Claim" against the "Named Insured".

If we make any payment under this Rectification Indemnity Coverage, we shall be subrogated to all your rights against any person or organization, including the right to participate with the "Insured" in the exercise of all the "Insured's" rights of recovery.  In the event an "Insured" either concurrently or subsequently files a "Protective Indemnity Claim" under this policy or a subsequent renewal for the same "Design Defect" for which the insured is undertaking or has previously undertaken rectification efforts, then any proceeds the "Insured" may receive from the "Design Professional's Insurance" shall be used to reimburse us for any payments under the Rectification Indemnity Coverage afforded under this coverage part.  If the proceeds received from the "Design Professional's Insurance" are less than the amount paid by us under this Rectification Indemnity Coverage, then difference between the amount paid by us under this Rectification Indemnity Coverage and the proceeds received from the "Design Professional's Insurance" shall erode the limits of liability available under the Contractor's Protective Liability Coverage Part.

In the event that a "Professional Liability Claim" arises out of the same "Design Defect" for which the insured is undertaking or has previously undertaken rectification efforts under the Rectification Indemnity Coverage under this coverage part, then the "Insured's" self insured retention obligation under the Contractor's Professional Liability Coverage Part shall be offset to the extent of the costs incurred by the "Insured" under their self insured retention obligations under the Rectification Indemnity Coverage afforded under this coverage part.   Any

payments made under this Rectification Indemnity Coverage part shall erode the limits of liability available under the Contractor's Professional Liability Coverage Part.

## B.  ARBITRATION

In the event that the "Named Insured" and we do not agree that "Actual and Necessary Costs and Expenses" presented by the "Named Insured" under this Coverage Part arises out of rectifying a "Design Defect," we mutually agree, the dispute, as to that sole issue only, shall be referred to the American Arbitration Association before a three member panel and pursuant to their then existing Construction Industry Rules for an opinion as to whether the breach was or was not the result of a "Design Defect".  The panel shall be composed of one licensed attorney, one licensed "Design Professional" and one licensed contractor.  The "Named Insured" and we agree to accept the opinion of a majority of the panel as final and binding upon each of us as to that issue only.

## II.  DEFINITIONS

In addition to Section II. DEFINITIONS of this policy, and solely as respects the coverage provided under Rectification Indemnity Coverage, the following Definitions shall apply:

A.  "Actual and Necessary Costs and Expenses" means those sums actually incurred by the "Named Insured" which are reasonably related to the efforts needed to remedy a "Design Defect" covered by this endorsement, less any overhead, profit and mark-up of the "Named Insured".

B.  "Design Defect" means an error, omission or negligent act in the preparation of engineering or architectural designs, plans, drawings, specifications, calculations, surveys and studies and shall not include any actual or alleged negligence in the review of shop drawings and submittals, issuance of change orders, observation of construction or review of the contractor's requests for payment.

C.  "Temporary Works" means formwork, structures, or mechanical plant designed and constructed for use as construction aids for a specific project.

## III.  EXCLUSIONS

In addition to Section III. EXCLUSIONS of this policy, and solely as respects the coverage provided under this Rectification Indemnity Coverage Endorsement, this insurance does not apply to:

A.  the failure of any "Temporary Works" to perform their intended function;

B.  loss of or damage to property other than property which forms the subject of the contract to which the "Professional Service" relates;

C.  any cost estimate being exceeded.

## IV.  REPORTING OF ACTUAL AND NECESSARY COSTS AND EXPENSES

Solely with respect to the coverage provided by this endorsement, the "Named Insured" must report the "Actual and Necessary Costs and Expenses" for a "Design Defect" to us during the policy period or any applicable Automatic Extended Reporting Period or Optional Extended Reporting Period.

## V.  SUB-LIMIT OF LIABILITY/SELF INSURED RETENTION/RETROACTIVE DATE

The following Sub-Limit of Liability and Self Insured Retention shall apply to RECTIFICATION INDEMNITY COVERAGE:

|  |  |  |
|---|---|---|
| Sub-Limit of Liability | $10,000,000 | Each Claim |
|  | $10,000,000 | Total for All Claims |
| Self Insured Retention | $2,000,000 | Each Claim |

This Sub-Limit shall be included within the Aggregate Limit of Liability stated in the Declarations and not in addition to said limit.

A retroactive date of 06/30/2011 shall apply to coverage provided under this endorsement.

## ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

**Endorsement #** 12

# ADA, FHA, OSHA, State Licensing and Regulatory Board Legal Expense Reimbursement Endorsement



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9487862-07 | 10/01/2018 | 10/01/2019 | 10/01/2018 | 18232000 | ---------- | ---------- |

**Named Insured and Mailing Address:**

LEND LEASE AMERICAS
200 PARK AVENUE
9TH FL
NEW YORK, NY  10166-0005

**Producer:**

MARSH USA INC
1166 AVENUE OF THE AMERICAS
NEW YORK, NY  10036-2708

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

The following **Section I.I. SUPPLEMENTAL PAYMENTS** shall be added to the policy following Section **I. INSURING AGREEMENT**:

**I.I.  SUPPLEMENTAL PAYMENTS**

All payments made under this section are not subject to the Self Insured Retention and are in addition to the Limits of Liability for each Coverage Part set forth in Item 2 of the Declarations. However, the Company shall not be obligated to make any payments under this Section after the Aggregate Limit of Liability set forth in the Declarations has been exhausted by payments of "Damages" and/or "Professional Liability Claim Expenses" or tendered into court.

A.  ADA, FHA, OSHA, State Licensing and Regulatory Board Legal Expense Reimbursement

The Company will reimburse the "Insured" for reasonable and necessary "Legal Expenses" incurred in responding to a proceeding initiated directly against the "Insured" by a:

1.  governmental, quasi-governmental or administrative agency under the Americans with Disabilities Act of 1990 (ADA) as amended 42 USC §§ 12101-12213 (2005), the Fair Housing Act (FHA) as amended 42 USC §§ 3601-3631 (2003), or the Occupational Safety and Health Act (OSHA) as amended 29 USC §§ 651-678 (1999); or

2.  by a state licensing or regulatory board;

up to a maximum of twenty-five thousand dollars ($25,000) per proceeding subject to a maximum of fifty thousand dollars ($50,000) per "Policy Period";

Provided always that any such proceeding results from "Professional Services" and is:

a.  first commenced against the "Insured" during the "Policy Period"; and

b.  reported to the Company in writing during the "Policy Period" and before any legal expenses have been incurred; and

c.  the "Professional Services" occurred on or after any applicable "Retroactive Date."

B.  For purposes of this Insuring Agreement, the following definition is added to **Section II. DEFINITIONS**:

U.  "Legal Expense" means the reasonable costs, charges, fees and expenses charged by an attorney appointed by us, (other than compensation of any "Insured") and incurred by the "Insured" solely in connection with such proceeding.

All other terms and conditions of this policy remain unchanged.

**Endorsement #**  13

# Pre-Claims Assistance Endorsement



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9487862-07 | 10/01/2018 | 10/01/2019 | 10/01/2018 | 18232000 | ---------- | ---------- |

**Named Insured and Mailing Address:**

LEND LEASE AMERICAS
200 PARK AVENUE
9TH FL
NEW YORK, NY  10166-0005

**Producer:**

MARSH USA INC
1166 AVENUE OF THE AMERICAS
NEW YORK, NY  10036-2708

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

In consideration of the premium charged, it is hereby understood and agreed that the following **Section I.I. SUPPLEMENTAL PAYMENTS** shall be added to the policy following Section **I. INSURING AGREEMENT**:

**I.I.  SUPPLEMENTAL PAYMENTS**

All payments made under this section are not subject to the Self Insured Retention and are in addition to the Limits of Liability for each Coverage Part set forth in Item 2 of the Declarations. However, the Company shall not be obligated to make any payments under this Section after the Aggregate Limit of Liability set forth in the Declarations has been exhausted by payments of "Damages" and/or "Professional Liability Claim Expenses" or tendered into court.

A.  Pre-Claims Assistance

If the "Insured" reports a circumstance during the "Policy Period," in accordance with Section **V. CLAIM PROVISIONS**, Item A.2. NOTICE OF CIRCUMSTANCE the Company may, in its sole discretion and at its expense, investigate or monitor such circumstance, and such costs or expenses will not be applied towards the Self Insured Retention or erode the applicable Limit of Liability until a "Claim" is made.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

**Endorsement #** 14

# Defense Provision – New York



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9487862-07 | 10/01/2018 | 10/01/2019 | 10/01/2018 | 18232000 | ---------- | ---------- |

**Named Insured and Mailing Address:**

LEND LEASE AMERICAS
200 PARK AVENUE
9TH FL
NEW YORK, NY  10166-0005

**Producer:**

MARSH USA INC
1166 AVENUE OF THE AMERICAS
NEW YORK, NY  10036-2708

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**Contractor's Protective Professional Indemnity & Liability Policy**

In consideration of the payment of premium and the Self Insured Retention by you and the reliance upon the statements in the Application made a part hereof, we agree with you, subject to all the terms, exclusions, and conditions of the policy that:

SECTION V., CLAIM PROVISIONS, paragraph A.1.D. shall be deleted in its entirety and replaced as follows:

D.  The "Insured" shall have the right to select legal counsel or the "Insured" shall have the right to consent to our choice of legal counsel, which consent shall not be unreasonably withheld. If the "Insured" elects to select the legal counsel we may exercise the right that such counsel have certain minimum qualifications with respect to their legal competency including experience in defending claims similar to the one pending against the "Insured" and require that such counsel have errors and omissions insurance coverage. The attorneys fees and all other litigation expenses we must pay to that counsel are limited to the rates we actually pay to counsel we retain in the ordinary course of business in the defense of similar claims in the community where the "Claim" arose or is being defended. With respect to any such counsel an "Insured" agrees to utilize its best efforts to have counsel respond to our request for information regarding the "Claim" in a timely manner.

The "Insured" shall have the right to participate in, and assist in the direction of the defense of any "Claim".

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Endorsement #  15

# Amendment of Definitions



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9487862-07 | 10/01/2018 | 10/01/2019 | 10/01/2018 | 18232000 | ---------- | ---------- |

**Named Insured and Mailing Address:**

LEND LEASE AMERICAS
200 PARK AVENUE
9TH FL
NEW YORK, NY  10166-0005

**Producer:**

MARSH USA INC
1166 AVENUE OF THE AMERICAS
NEW YORK, NY  10036-2708

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

Section II. DEFINITIONS:    Definition E., "Design Professional" will be deleted in its entirety and replaced with:

E. "Design Professional" means those persons or entities or successors legally qualified to perform "Professional Services" either itself or through the services of a subcontractor or subconsultant at any tier.

Sub-Section 6. of Definition G., "Insured" will be deleted in its entirety and replaced with:

6. any "Insured" with regard to its participation in a legal entity including a limited liability company, partnership, or joint venture, but only to the extent of the Insured's legal liability resulting from its performance of "Professional Services" under the respective legal entity or joint venture.

Definition J., "Named Insured" will be deleted in its entirety and replaced with:

J. "Named Insured" means Lend Lease Americas Inc., including any and all affiliates, divisions, subsidiary corporations, or subsidiary limited liability companies thereof, of any tier, in the past, as now or hereafter constituted; and any other legal entity in which you have more than fifty percent ownership or over which you exercise management or financial control or have contractually agreed to provide insurance for such an entity. It is further agreed, all partnerships or joint ventures, including all tiers of ownership of said partnerships or joint ventures, in which the Named Insured or any other  Named Insured entity, of any tier, in the past, as now or hereafter constituted has more than fifty percent ownership, shall be included as Named Insured, but this policy shall apply as excess of any other valid and collectible insurance available to the partnership or joint venture.

Definition O., "Professional Services" will be deleted in its entirety and replaced with:

O. "Professional Services" for purposes of Coverage Part A means those services that the "Insured", a "Design Professional", or an entity providing services under contract to a "Design Professional", are legally qualified to perform for others in their capacity as a design professional, architect, engineer, landscape architect, surveyor, quantity surveyor, land surveyor or planning supervisor, construction manager, design management, construction (design and management) supervision, a LEED accredited professional, interior designer/space planner, cost consultant, scientist, technical consultant, property manager or facilities manager, project management, procurement management, program management, or other consultant or inspector, provider of "Technology Services", or as specifically described by endorsement to this policy.

Definition P., "Professional Services" will be deleted in its entirety and replaced with:

P. "Professional Services" for purposes of Coverage Part B means those services that the "Design Professional", or an entity providing services under contract to the "Design Professional", are legally qualified to perform for others in their capacity as a design professional, architect, engineer, landscape architect, land surveyor or planner, construction manager, a LEED accredited professional, interior designer/space planner, provider of "Technology Services", or as specifically described by endorsement to this policy.

Definition R., "Protective Indemnity Claim" will be deleted in its entirety and replaced with:

R. "Protective Indemnity Claim" means a written demand by you against the "Design Professional" seeking a remedy from or alleging liability or responsibility on the part of such "Design Professional" for "Loss" arising out of the "Design Professional's" rendering or failure to render "Professional Services".

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

**Endorsement #** 16

# Amendment of Prior Knowledge Provision



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9487862-07 | 10/01/2018 | 10/01/2019 | 10/01/2018 | 18232000 | ---------- | ---------- |

**Named Insured and Mailing Address:**

LEND LEASE AMERICAS
200 PARK AVENUE
9TH FL
NEW YORK, NY  10166-0005

**Producer:**

MARSH USA INC
1166 AVENUE OF THE AMERICAS
NEW YORK, NY  10036-2708

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

In consideration of the premium charged, it is agreed that SECTION I. INSURING AGREEMENT, COVERAGE PART A - CONTRACTOR'S PROFESSIONAL LIABILITY COVERAGE, Paragraph 3. is deleted in its entirety and replaced with the following:

3. prior to the effective date of the first policy issued to you and continuously renewed by us, the Director of Risk Management had no knowledge of any circumstance that could reasonably be expected to result in a "Professional Liability Claim".

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

**Endorsement #**  17

# Indemnified Parties - Vicarious Liability



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9487862-07 | 10/01/2018 | 10/01/2019 | 10/01/2018 | 18232000 | ---------- | ---------- |

**Named Insured and Mailing Address:**
LEND LEASE AMERICAS
200 PARK AVENUE
9TH FL
NEW YORK, NY  10166-0005

**Producer:**
MARSH USA INC
1166 AVENUE OF THE AMERICAS
NEW YORK, NY  10036-2708

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

In consideration of the premium charged, it is hereby understood and agreed that the Company shall indemnify the "Indemnified Parties" for "Damages" and reasonable "Claims Expenses" for "Pollution Event(s)"

(1) to the proportionate extent caused by the acts, errors or omissions of the "Named Insured(s)" in the providing of or the failure to provide "Professional Services"; and

(2) in excess of the Self Insured Retention; and

(3) subject to all terms, conditions and exclusions of this Policy and its endorsements. Except as otherwise provided in this Policy, the Company has no indemnity or other obligations for liabilities, damages, judgments, and / or attorneys' fees and related costs incurred by or on behalf of the "Indemnified Parties".

The Company, in its discretion and judgment, may elect to defend the "Indemnified Parties" for "Third Party Claims" involving any matter, which allegedly or actually falls predominately within the indemnification obligation set forth in this endorsement. Should the Company not defend the "Indemnified Parties", at the conclusion of any "Claim", arbitration, or mediation, it will reimburse the "Indemnified Parties" for "Damages" and reasonable "Claims Expenses" for "Pollution Event(s)" to the proportionate extent caused by the acts, errors or omissions of the "Named Insured(s)" in the providing of or failure to provide "Professional Services" for the Specified Project; and (2) in excess of the Self Insured Retention; and

(3) subject to all of the terms, conditions and exclusions of this Policy and its endorsements. Should the Company elect to provide a defense for the "Indemnified Parties", the following additional conditions shall  apply:

1. The defense shall be conducted jointly with the defense of the same or any related "Claim" asserted against the "Named Insured".

2. The "Indemnified Parties" shall cooperate fully with the Company and / or its designee or appointed defense counsel in connection with the defense.

3. The Company shall have the exclusive right to control the conduct of the defense including selection of defense counsel, determination of defense strategy, and decisions regarding settlement or compromise.

"Third Party Claims" shall not include any Claim made by any person or entity in contract with the "Indemnified Parties" or  any entity providing services or materials for the Specified Project, including any employee, heir or relative of suchentity.

For the purposes of this endorsement, the following definitions are added:

1. "Indemnified Parties" shall mean National Electrical Benefit Fund (NEBF) as financier to contract entered into by Bovis Lend Lease Inc. for the development of 210 N. Wells, Chicago, IL, USA 60611:

2. "Pollution Event(s)" shall mean the discharge, dispersal, release or escape of any acid, liquid, gaseous or thermal irritant, contaminant or pollutant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

**Endorsement #** 18

# Negligence Endorsement



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9487862-07 | 10/01/2018 | 10/01/2019 | 10/01/2018 | 18232000 | ---------- | ---------- |

**Named Insured and Mailing Address:**

LEND LEASE AMERICAS
200 PARK AVENUE
9TH FL
NEW YORK, NY  10166-0005

**Producer:**

MARSH USA INC
1166 AVENUE OF THE AMERICAS
NEW YORK, NY  10036-2708

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

In consideration of the premium charged, it is hereby understood and agreed that negligent or negligence, wherever it is used in this policy, including attached endorsements, is deleted in its entirety.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

**Endorsement #**  19

# Amendment of Insuring Agreement - Coverage Part A



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9487862-07 | 10/01/2018 | 10/01/2019 | 10/01/2018 | 18232000 | ---------- | ---------- |

**Named Insured and Mailing Address:**

LEND LEASE AMERICAS
200 PARK AVENUE
9TH FL
NEW YORK, NY  10166-0005

**Producer:**

MARSH USA INC
1166 AVENUE OF THE AMERICAS
NEW YORK, NY  10036-2708

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

In consideration of the premium charged, it is agreed that SECTION I. INSURING AGREEMENT, COVERAGE PART A  CONTRACTOR'S PROFESSIONAL LIABILITY COVERAGE, Paragraph 1. is deleted in its entirety and replaced with the following:

1. the "Professional Liability Claim" arises out of an actual or alleged act, error or omission with respect to the rendering of or failure to render "Professional

Services" or that should have been rendered by you or any entity for whom you are legally responsible, including your liability arising out of any joint ventures in which you participate;

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

**Endorsement #**  20

# Amendment of Notice of Circumstance



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9487862-07 | 10/01/2018 | 10/01/2019 | 10/01/2018 | 18232000 | ---------- | ---------- |

**Named Insured and Mailing Address:**

LEND LEASE AMERICAS
200 PARK AVENUE
9TH FL
NEW YORK, NY  10166-0005

**Producer:**

MARSH USA INC
1166 AVENUE OF THE AMERICAS
NEW YORK, NY  10036-2708

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

In consideration of the premium charged, it is hereby understood and agreed that Paragraph 2. NOTICE OF CIRCUMSTANCE of SECTION V. CLAIM PROVISIONS, A. PROFESSIONAL LIABILITY CLAIMS AND OTHER "CLAIMS" is deleted in its entirety and replaced with the following:

2. NOTICE OF CIRCUMSTANCE

If during the "Policy Period" the "Insured's" Director of Risk Management becomes aware of any act, error or omission which may be expected to give rise to a "Claim" under the policy, the "Insured" shall provide written notice to us as soon as possible containing any particulars sufficient to identify an "Insured" and provide reasonably obtainable information with respect to:

A. the time, place and explanation of the act, error or omission including how the "Insured" first became aware of the act, error or omission;

B. the name and addresses of any injured parties, available witnesses, and the "Damages" which have or may result from such act, error, or omission;

C. any and all investigative or engineering reports, data or information about the act, error or omission, or "Damages";

D. copies of any relevant contracts between the "Insured" and its client for "Professional Services".

then any "Claim", for which coverage is provided by this policy, that may be made against the "Insured" arising out of such act, error or omission shall be deemed for the purposes of this insurance, to have been made on the date on which the notice was mailed by you. In such event, the "Insured" agrees to cooperate fully with us and do all things reasonably necessary to allow us to investigate such claim and mitigate to the fullest extent possible the resultant "Damages", if any. At our sole discretion, we may elect to investigate any circumstance, which is reported to us. Any costs associated with the investigation of a circumstance prior to a "Claim" being made will not be considered "Claim Expenses". These costs shall not be applied toward reducing the applicable Self Insured Retention and are in addition to the Limit of Liability and shall be borne by us.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

**Endorsement #** 21

# Nuclear Energy Liability Exclusion - Broad Form



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9487862-07 | 10/01/2018 | 10/01/2019 | 10/01/2018 | 18232000 | ---------- | ---------- |

**Named Insured and Mailing Address:**

LEND LEASE AMERICAS
200 PARK AVENUE
9TH FL
NEW YORK, NY  10166-0005

**Producer:**

MARSH USA INC
1166 AVENUE OF THE AMERICAS
NEW YORK, NY  10036-2708

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the following:

**Contractor's Protective Professional Indemnity and Liability Insurance Policy**

In consideration of the premium charged, it is agreed that this policy does not apply:

A.  Under any liability coverage, to "bodily injury" or "property damage";

    1.  With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an "insured" under any such policy but for its termination upon exhaustion of its limit of liability; or

    2.  Resulting from the "hazardous properties" of "nuclear material" and with respect to which (i) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (ii) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, with any person or organization.

B.  Under any medical payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

C.  Under any liability coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material" if:

    1.  The "nuclear material" (i) is at any "nuclear facility" owned by, or operated by or on behalf of, an insured or (ii) has been discharged or dispersed there from;

    2.  The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

    3.  The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility" but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such a "nuclear facility" and any property thereat.

D.  As used in this endorsement:

    "Hazardous properties" include radioactive, toxic or explosive properties;

    "Nuclear material" means "source material", "special nuclear material" or "by-product material";

    "Source material", "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used of exposed to radiation in a "nuclear reactor";

"Waste" means any waste material (1) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (2) resulting from the operation by any person or organization of any "nuclear facility" included under paragraphs (1) and (2) of the definition of "nuclear facility".

"Nuclear facility" means:

1.  Any "nuclear reactor";

2.  Any equipment or device designed or used for (i) separating the isotopes of uranium or plutonium, (ii) processing or utilizing "spent fuel" or (iii) handling, processing or packaging "waste";

3.  Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

4.  Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste"; and includes the site on which any of the foregoing is located, all operations conducted on such site and premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**Endorsement #** 22

# Cancellation, Nonrenewal and Conditional Nonrenewal – New York



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9487862-07 | 10/01/2018 | 10/01/2019 | 10/01/2018 | 18232000 | ---------- | ---------- |

**Named Insured and Mailing Address:**

LEND LEASE AMERICAS
200 PARK AVENUE
9TH FL
NEW YORK, NY  10166-0005

**Producer:**

MARSH USA INC
1166 AVENUE OF THE AMERICAS
NEW YORK, NY  10036-2708

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**Contractor's Protective Professional Indemnity & Liability Policy**

In consideration of the payment of premium and the Self Insured Retention by you and the reliance upon the statements in the Application made a part hereof, we agree with you, subject to all the terms, exclusions, and conditions of the policy that SECTION VII. CONDITIONS, Paragraph E. CANCELLATION is deleted in its entirety and replaced with the following:

E.   **CANCELLATION, NONRENEWAL AND CONDITIONAL NONRENEWAL**

1.   **CANCELLATION**

a.   This policy may be cancelled by you by surrender of the policy to us or by mailing written notice to us stating when such cancellation shall take effect. If this policy is cancelled by you, we shall retain the customary short-rate proportion of the premium. In no event may the requested date of cancellation be greater than ten (10) days prior to the date the request is received by us.

b.   If this policy has been effect for sixty (60) days or fewer, we may cancel the entire policy by mailing or delivering to the first Named Insured written notice stating the reason for cancellation at the mailing address shown in this policy, and the authorized agent or broker at least:

(1)   Twenty (20) days before the effective date of cancellation if the policy is cancelled for any reason not included in paragraph (2) below.

(2)   Fifteen (15) days before the effective date of cancellation if the policy is cancelled for any of the following reasons:

(a)   Nonpayment of premium;

(b)   Conviction of a crime arising out of acts increasing the hazard insured against;

(c)   Discovery of fraud or material misrepresentation in the obtaining of the policy or in the presentation of a "claim" there under;

(d)   After issuance of the policy or after the last renewal date, discovery of an act or omission, or a violation of any policy condition, that substantially and materially increases the hazard insured against, and which occurred subsequent to inception of the current "policy period";

(e)   Material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary date of the policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed;

**CLASSIFICATION CODE: 2-14180 LARGE FIRMS**

(f)   Required pursuant to a determination by the Superintendent that continuation of the present premium volume of the insurer would jeopardize the insurer's solvency or be hazardous to the interest of the insurer's policyholders, creditors or the public;

(g)   A determination by the Superintendent that the continuation of the policy would violate, or would place the insurer in violation of, any provision of the Insurance Code;

(h)   Revocation or suspension of your license to practice your profession; or

(i)   With respect to an excess liability policy, the cancellation of one or more of the underlying policies for any of the reasons set forth in paragraphs (a) through (h) of this subsection, and such policies are not replaced without lapse.

(3)   If this policy has been in effect for greater than sixty (60) days, or if this policy is a renewal or continuation of a policy issued by us, the policy may be cancelled by us for any reasons listed in Subsection 1.b.(2) above, provided a written notice stating the reason for cancellation is mailed or delivered to the first Named Insured at the address shown in this policy, and to the authorized agent or broker at least fifteen (15) days before the effective date of cancellation.

(4)   Notice of cancellation will state the effective date of cancellation. The "policy period" will end on that date.

(5)   If notice is mailed, proof of mailing will be sufficient proof of notice.

(6)   If you cancel, earned premium will be computed in accordance with the customary short-rate table and procedure. If we cancel, earned premium shall be computed pro-rata.

However, when the premium is advanced under a premium finance agreement, the cancellation refund will be pro-rata. Under such financed policies, we will be entitled to retain a minimum earned premium of 10% of the total policy premium or $60, whichever is greater. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

(7)   If one of the reasons for cancellation in Subsection 1.b.(2) exists, we may cancel this entire policy, even if the reason for cancellation pertains only to a new coverage or endorsement initially effective subsequent to the original issuance of this policy.

## 2.   **NONRENEWAL**

If we elect not to renew this policy, we shall send notice as provided in Subsection 4. below along with the reason for nonrenewal.

## 3.   **CONDITIONAL RENEWAL**

If we condition renewal of this policy upon:

a.   Change of limits;

b.   Change in type of coverage;

c.   Reduction of coverage;

d.   Increased self insured retention;

e.   Additional exclusion; or

f.   Increased premiums in excess of 10%, exclusive of any premium increase due to and commensurate with insured value added or increased exposure units; or as a result of experience rating, loss rating, retrospective rating or audit;

We shall send notice as provided in Subsection 4 below.

## 4.   **NOTICES OF NONRENEWAL AND CONDITIONAL RENEWAL**

a.   If the insurer decides not to renew this policy or to conditionally renew this policy as provided in Subsections 2. and 3. above, the insurer shall mail or deliver written notice to the first Named Insured at least sixty (60) but not more than one hundred twenty (120) days before:

(1)   The expiration date; or

**CLASSIFICATION CODE: 2-14180 LARGE FIRMS**

    (2)  The anniversary date if this is a continuous policy.

  b.  In the event we extend the "policy period" to comply with a. above, the aggregate limit of the expiring policy shall be increased in proportion to the policy extension.

  c.  Notice will be mailed or delivered to the first Named Insured at the address shown in the policy and to the au thorized agent or broker. If notice is mailed, proof of mailing will be sufficient proof of notice.

  d.  We will not send the first Named Insured notice of nonrenewal or conditional renewal if you, the authorized agent or broker or another insurer of yours mails or delivers notice that the policy has been replaced or is no longer desired.

**5.  AVAILABILITY OF LOSS INFORMATION**

  a.  Every notice of cancellation, conditional renewal and nonrenewal shall advise of the availability of the following loss information:

    (1)  Information on closed claims, including date and description of occurrence, and any payments;

    (2)  Information on open claims, including date and description of occurrence, and amounts of any payments; and

    (3)  Information on notice of any occurrences, including date and description of occurrence.

  b.  Upon written request by you or such insured, authorized agent or broker, we shall provide the loss information in accordance to a. (1) through (3) of this subsection.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

**Endorsement #** 23

# New York Regulation 121
# Notice and Disclosure Statement



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| EOC 9487862-07 | 10/01/2018 | 10/01/2019 | 10/01/2018 | 18232000 | ---------- | ---------- |

**Named Insured and Mailing Address:**

LEND LEASE AMERICAS
200 PARK AVENUE
9TH FL
NEW YORK, NY 10166-0005

**Producer:**

MARSH USA INC
1166 AVENUE OF THE AMERICAS
NEW YORK, NY 10036-2708

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**Contractor's Protective Professional Indemnity & Liability Policy**

<u>Claims Made Relationship</u>

"Claims made relationship" means that period of time between the effective date of your first claims-made policy with us and the cancellation or nonrenewal of the last consecutive claims made policy between such parties, where there has been no gap in coverage, but does not include any period covered by extended reporting period coverage.

<u>Retroactive Date/Prior Acts Exclusion Date</u>

If the policy has a retroactive date feature or an exclusion or other wording deleting coverage for incidents that happened before a certain date (a prior acts exclusion) then THERE IS NO COVERAGE FOR INCIDENTS THAT HAPPENED PRIOR TO THAT DATE.

<u>Claims Made</u>

In a claims made policy, coverage is provided for liability ONLY IF THE CLAIM FOR LOSS IS FIRST MADE AGAINST THE INSURED AND REPORTED TO THE COMPANY IN WRITING DURING THE POLICY PERIOD. All coverage ceases upon termination of the policy, except for the extended reporting period coverage.

<u>Automatic Extended Reporting Period / Optional Extended Reporting Period</u>

An automatic extended reporting period coverage goes into effect upon termination of coverage, however, this automatic extended reporting period lasts for only sixty (60) days. In addition to the automatic extended reporting period an optional extended reporting period of one (1), two (2) or three (3) years in duration may be purchased. The automatic extended reporting period is effectuated and the optional extended reporting period can be purchased if you or we terminated coverage. The extended reporting periods provide coverage for a period of time after termination of the policy for incidents that have happened before the termination of coverage and otherwise covered by the policy but only if the "claim" is first made against the "insured" and reported in writing to us during an extended reporting period. After the end of the extended reporting period, you will have a gap in your insurance coverage, unless you have obtained appropriate coverage to fill the gap.

UPON TERMINATION OF COVERAGE IT IS VERY IMPORTANT THAT YOU CONSULT WITH YOUR INSURANCE AGENT OR BROKER OR OTHER PROFESSIONAL INSURANCE ADVISOR.

There is no additional premium charge for the automatic extended reporting period.

The additional premium charged for an optional extended reporting period shall be as follows:

**CLASSIFICATION CODE: 2-14180 LARGE FIRMS**

One (1) year in duration – One hundred percent (100%) of the premium per expiring "policy period".

Two (2) years in duration – One hundred fifty (150%) of the premium per expiring "policy period".

Three (3) years in duration – Two hundred percent (200%) of the premium per expiring "policy period".

Upon cancellation due to nonpayment of premium or fraud on your part, we shall not be required to provide a premium quotation for an optional extended reporting period unless requested by you.

<u>Future Premium Increases As Claims Made Relationship Matures</u>

During the first several years of being covered on a claims made basis, claims made rates are generally comparatively lower than rates on other types of policies generally known as occurrence policies, especially if there is no prior acts coverage initially, and you can expect substantial annual premium increases, independent of overall rate level increases, until the claims made relationship reaches maturity.

THIS DISCLOSURE SUPPLEMENT GENERALLY DISCUSSES CERTAIN IMPORTANT FEATURES OF THE POLICY. YOU SHOULD READ THE ENTIRE POLICY CAREFULLY AND DISCUSS IT WITH AN INSURANCE AGENT OR BROKER OR OTHER PROFESSIONAL INSURANCE ADVISOR. THE PROVISIONS OF THE POLICY FORM AND ENDORSEMENTS THERETO ARE CONTROLLING.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

**CLASSIFICATION CODE: 2-14180 LARGE FIRMS**

**Endorsement #**  24

# Sanctions Exclusion Endorsement



**Policyholder:**  LEND LEASE AMERICAS

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

The following exclusion is added to the policy to which it is attached and supersedes any existing sanctions language in the policy, whether included in an Exclusion Section or otherwise:

SANCTIONS EXCLUSION

Notwithstanding any other terms under this policy, we shall not provide coverage nor will we make any payments or provide any service or benefit to any insured, beneficiary, or third party who may have any rights under this policy to the extent that such cover, payment, service, benefit, or any business or activity of the insured would violate any applicable trade or economic sanctions law or regulation.

The term policy may be comprised of common policy terms and conditions, the declarations, notices, schedule, coverage parts, insuring agreement, application, enrollment form, and endorsements or riders, if any, for each coverage provided. Policy may also be referred to as contract or agreement.

We may be referred to as insurer, underwriter, we, us, and our, or as otherwise defined in the policy, and shall mean the company providing the coverage.

Insured may be referred to as policyholder, named insured, covered person, additional insured or claimant, or as otherwise defined in the policy, and shall mean the party, person or entity having defined rights under the policy.

These definitions may be found in various parts of the policy and any applicable riders or endorsements.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED**